CR-18-00464-PHX-DJH, April 5, 2018

1              **UNITED STATES DISTRICT COURT**

2             **FOR THE DISTRICT OF ARIZONA**

3               _____

4

   **United States of America,**        )

5                            )

                  Plaintiff,   )

6   vs.                      )

                            )  CR-18-00464-PHX-DJH

7   **Carl Allen Ferrer,**          )

                            )

8               Defendant.   )

                            )  April 5, 2018

9                            )  Phoenix, Arizona

   _____ )

10

11

12      **BEFORE:  THE HONORABLE JOHN Z. BOYLE, MAGISTRATE JUDGE**

13           **REPORTER'S TRANSCRIPT OF PROCEEDINGS**

14       **INITIAL APPEARANCE/ARRAIGNMENT/PLEA HEARING**

15

16

17

18

19

20

21   Transcriptionist:

   **Elaine Cropper, RDR, CRR, CCP**

22   Sandra Day O'Connor U.S. Courthouse, Suite 312

   401 West Washington Street, SPC 35

23   Phoenix, Arizona  85003-2151

   (602) 322-7245/(fax) 602.322.7253

24

   Proceedings Recorded by Electronic Sound Recording

25   Transcript Produced by Transcriptionist

CR-18-00464-PHX-DJH, April 5, 2018

1                          **A P P E A R A N C E S**

2

3     For the Government:
              DOMINIC W. LANZA, ESQ.
              KEVIN M. RAPP, ESQ.
4             MARGARET PERLMETER, ESQ.
              U.S. Attorney's Office
5             40 North Central Avenue, Suite 1200
              Phoenix, AZ  85004-4408
6             602.514.7500

7     For the Government:
              REGINALD E. JONES, ESQ.
8             U.S. Department of Justice
              Child Exploitation and Obscenity Section
9             950 Pennsylvania Ave. N.W., Room 2116
              Washington, D.C.  20530
10            202.616.2870

11    For the Defendant:
              NANCI CLARENCE, ESQ.
12            JONATHAN BAUM, ESQ.
              Clarence, Dyer & Cohen, L.L.P.
13            899 Ellis St.
              San Francisco, CA  94109
14            415.749.1800/(fax) 415.749.1694

15    For the corporate entities:
              DAVID L. BOTSFORD, ESQ.
16            BOTSFORD & ROARK
              1307 West Ave.
17            Austin, TX  78701
              514.476.1900/(fax) 512.479.8040

18

19

20

21

22

23

24

25

                   United States District Court

## P R O C E E D I N G S

(Court was called to order by the courtroom deputy.)

(The following proceedings were designated under seal until further order of the Court; unsealed at Docket #16, April 12, 2018.)

THE COURT:  Thank you.  Please be seated.

COURTROOM DEPUTY:  Case number WI-18-272, *United States of America v. Carl Ferrer*, on for initial appearance arraignment, and change of plea hearings.

MR. LANZA:  Good afternoon, Your Honor.  Dominic Lanza, Kevin Rapp, Reggie Jones, and Peggy Perlmeter on behalf of the United States.

THE COURT:  Good afternoon to you all.

MS. CLARENCE:  Good afternoon, Your Honor.  Nanci Clarence.  I'm here with Jonathan Baum from the law firm Clarence, Dyer & Cohen in San Francisco, California, admitted pro hac vice for these proceedings.  And we represent Carl Ferrer who is before you.

THE COURT: All right.  Thank you.  Good afternoon.

MR. BAUM:  Good afternoon, Your Honor.

THE COURT:  And Mr. Ferrer?

THE DEFENDANT:  Carl Ferrer, defendant.

THE COURT:  All right.  Good afternoon.  Let me handle a couple of matters first.  If someone from the U.S. Attorney's Office would approach.  Your office brought this

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1   over to our chambers.  This was in your office on the third

2   floor.

3            All right.  Before we begin, Mr. Ferrer, I wanted to

4   address a couple of housekeeping questions.  It's my intent to

5   start with your case, Mr. Ferrer, first, your personal case.  I

6   know the factual basis is almost identical.

7            Do you understand that?

8            THE DEFENDANT:  I do, Your Honor.

9            THE COURT:  Okay.  To be clear as well, we have a

10  courtroom full of people but this is a sealed proceeding.  Does

11  either party object to anyone who is here in the courtroom?

12           MR. LANZA:  No, Your Honor.

13           MS. CLARENCE:  No, Your Honor.

14           MR. LANZA:  And if I could add, for the record, the

15  motion that we had filed to seal, we intend the entire case to

16  be sealed for the time being.

17           THE COURT:  All right.

18           MR. BOTSFORD:  Excuse me, Your Honor.  Just for

19  purposes of the record clarity, David Botsford on behalf of the

20  six corporate entities.  We have no objection to sealing of the

21  courtroom.  I've not made an appearance before you so I wanted

22  that to be clear.

23           THE COURT:  All right.  Thank you.  Seeing no

24  objection by anyone who is present, we'll seal the matter for

25  now.  That does bring up my next question, which is, I

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    understand that Mr. Ferrer's case will be sealed for now.  Of

2    course this is what will be Judge Humetewa's case and I'll

3    conduct these hearings as sealed proceedings.

4            The six corporate entities  I would like to hear more

5    information about that because my concern would be whether or

6    not anyone would have the right to object if that matter were

7    to remain sealed for a great deal of time.  We'll address that,

8    I guess, first.

9            Let me hear from the Government and then I'll turn to

10   you, sir.

11           MR. LANZA:  Thank you, Your Honor.  We also intend

12   that the corporate matter will be sealed only for a short

13   period of time, about a week, in which case we would move to

14   unseal it.  And any parties that might then have any thoughts

15   about it would have an ample chance to raise their thoughts

16   then.

17           THE COURT:  All right.

18           Ms. Botsford?

19           MR. BOTSFORD:  Your Honor, we have no objection to

20   the course of conduct that counsel for the Government is

21   recommending to the Court.  We agree to that.

22           THE COURT:  So that means in approximately a week,

23   they will file a motion to unseal the corporate matters one

24   through six.  I presume those will get their own case number

25   and you will not object?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          MR. BOTSFORD:  No, Your Honor.

2          THE COURT:  All right.  You're welcome to stay at the

3   counsel table.  Or the microphone there will work just as well.

4          MR. BOTSFORD:  Very fine, Your Honor.  In Austin, if

5   I don't go to the podium, I get (inaudible).

6          THE COURT:  Okay.  Any objection to handling

7   Mr. Ferrer's case first and then handling the six corporate

8   defendants second?

9          MR. LANZA:  No, Your Honor.

10          THE COURT:  From defense?

11          MS. CLARENCE:  No, Your Honor.

12          THE COURT:  And Mr. Botsford?

13          MR. BOTSFORD:  No objection, Your Honor.

14          THE COURT:  All right.  That's how we'll proceed

15   then.

16          Be prepared to address the issue of whether

17   Mr. Ferrer has the authority to enter a plea on behalf of the

18   corporation.  I'm sure you'll do that but it's a question that

19   I have for you.

20          All right.  Let's handle -- before we even begin the

21   question of sentencing, assuming there's a plea proceeding in

22   all of these matters, when do the parties anticipate a

23   sentencing happening?  And the reason I ask, of course, is

24   there appear to be California and Texas matters?

25          MS. CLARENCE:  There are.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    THE COURT:  And then we have the question of which
2  jurisdiction would sentence first, and I notice your provision
3  was any term of imprisonment would be served federally.  So I
4  thought we ought to address that even before we go any further.
5    MR. LANZA:  Thank you, Your Honor.  It's our
6  understanding that sentencing will be delayed because
7  Mr. Ferrer is also entering into a cooperation addendum.  But
8  once it's time for the three cases to be sentenced, the federal
9  sentencing would come first which would then enable the
10  provision we have in the plea agreement about concurrency to be
11  valid.
12    THE COURT:  All right.
13    MS. CLARENCE:  Yes.  And we concur on that, Your
14  Honor.
15    THE COURT:  All right.
16    Mr. Ferrer, I bring that up now because we're going
17  to do the initial appearance and arraignment on the information
18  in your case.  We'll talk about your release conditions and I
19  want to have an understanding of how your cases will proceed.
20    So having a sense of how sentencing will proceed will
21  help me in that regard.
22    So unless there's anything else to address, I'll move
23  to the initial appearance.
24    Mr. Ferrer, in your case, an information has been
25  lodged.  Have you reviewed that information with your counsel?

CR-18-00464-PHX-DJH, April 5, 2018

1          THE DEFENDANT:  I have, Your Honor.

2          THE COURT:  All right.  It's two pages in length.

3          Ms. Clarence, when did you receive a copy of the

4     information and when did you review it with Mr. Ferrer

5     generally?

6          MS. CLARENCE:  Generally, Your Honor, last week there

7     was an information that was provisionally made available.  I

8     reviewed it in detail with Mr. Ferrer today and in days

9     preceding, although there might have been iterations that

10    chipped a little bit, but he did review it in my presence.

11         THE COURT:  Safe to say this case has been ongoing

12    for several months at least?

13         MS. CLARENCE:  I can't say that, Your Honor.  I think

14    this has come upon us in relatively shorter order and the

15    parties have worked diligent to achieve this result.

16         THE COURT:  Okay.  The main reason I ask is to make

17    sure you, Mr. Ferrer, have had enough time to review the

18    information and understand its charge.  Have you had enough

19    time to talk to your attorney about your case?

20         THE DEFENDANT:  I have had enough time.  I have

21    reviewed it and I am in agreement.

22         THE COURT:  All right.

23         MS. CLARENCE:  Perhaps, Your Honor, I can add.

24    Although the discussions with the Government came up in a

25    relatively recent time, I have represented Mr. Ferrer, as well

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    as Mr. Baum and others from my office, for at least 14 months.

2    So we've met many times, discussed the merits of the

3    allegations and the issues in the case.

4              THE COURT:  Okay.  Well, we're just at the initial

5    appearance so let me refer then to the information.

6              Mr. Ferrer, in your case, an information had been

7    lodged.  It has one charge which is the felony offense of

8    conspiracy.  The information is two pages.  I'll advise you of

9    your right to remain silent.  Anything you say can be used

10   against you in the future.

11             You have the right to have counsel represent you.  I

12   know you have retained counsel.  If you could not have afforded

13   your own attorney, the Court would have appointed a counsel for

14   you at no charge to you.

15             Do you understand those rights?

16             THE DEFENDANT:  I do, Your Honor.

17             THE COURT:  All right.

18             Ms. Clarence, regarding the information, do you waive

19   reading?

20             MS. CLARENCE:  So waived.

21             THE COURT:  All right.

22             Sir, did you review, again, the information with your

23   counsel?

24             THE DEFENDANT:  I did, Your Honor.

25             THE COURT:  All right.  And we will commence with the

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1  change of plea in a moment.  And if that goes through, I'll

2  give you your initial sentencing date.  It sounds like it may

3  be continued, but you'll have a sentencing date.  If you elect

4  not to plead guilty, then I'll advise you of your trial date.

5          The next point we have is your release conditions.

6          What's the Government's request regarding release?

7          MR. LANZA:  We are not seeking detention, Your Honor,

8  and I believe we've already discussed with counsel and Pretrial

9  a set of conditions that we all are in agreement on.

10         THE COURT:  That would include supervision by

11 Pretrial Services and other factors which would include no

12 travel outside of Arizona, Texas, and California and Pretrial

13 Services' approval for transactions above $500 with the

14 exception of auto and mortgage payments.

15         Ms. Clarence, have you already reviewed these terms?

16         MS. CLARENCE:  Yes, Your Honor.

17         THE COURT:  Okay.  And he -- anything to add to them?

18         MS. CLARENCE:  No.  And no objections to those terms,

19 Your Honor.

20         THE COURT:  Okay.

21         Mr. Ferrer, I did review an initial Pretrial Services

22 report.  The Government is not recommending your detention.  I

23 find release is appropriate.  So let me review your release

24 conditions with you now --

25         MR. LANZA:  Could we have just a moment?  There might

CR-18-00464-PHX-DJH, April 5, 2018

1  be one other one.

2          THE COURT:  Yes.

3              (Counsel confer.)

4          MR. LANZA:  I just want to be clear.  I think

5  electronic monitoring was a part of that.

6          THE COURT:  There is with a curfew which means

7  residence restriction is directed by the supervising final

8  Pretrial Services officer.

9              (Counsel confer.)

10          MS. CLARENCE:  I'm sorry.  I was speaking to

11  Mr. Ferrer when you were asked that question, Your Honor.

12          THE COURT:  I should tell you as well, I can set

13  these initial conditions.  If there is an objection, you do

14  have the right to a full detention hearing so I'll handle this

15  however you wish.  I can go forward with these conditions now.

16  They make sense to me and I'm inclined to agree with all of

17  them.  However, I don't want to prejudice your ability to

18  prepare for detention.  You have that right.

19          Government is not seeking detention but are you

20  prepared to proceed today?

21          MS. CLARENCE:  Yes, we are, Your Honor.

22          THE COURT:  Okay.

23          All right.  Regarding those conditions, anything else

24  to be heard on regarding restrictions on monitoring?

25          MS. CLARENCE:  No, Your Honor.

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          THE COURT:  Okay.  From Pretrial Services, if there's

2  anything that I've not included or you have a question, please

3  let me know.

4          PRETRIAL OFFICER:  No, Your Honor.  Thank you.

5          THE COURT:  Thank you.

6          Mr. Ferrer, you're required to appear at all

7  proceedings in this case and surrender for service of a

8  sentence if one is imposed.  You'll not commit any federal,

9  state, tribal, or local crime on release; cooperate in the

10  collection of DNA sample if it's authorized by law; advise the

11  Court, your attorney, and the U.S. Attorney in writing if you

12  wish to change your address or telephone number.  You must get

13  prior approval to change your address.

14          Do you understand those conditions so far?

15          THE DEFENDANT:  I do, Your Honor.

16          THE COURT:  Do not travel outside of the states of

17  Arizona, Texas, and California.  If you need to travel outside

18  those states, please get permission from Pretrial Services

19  before traveling outside those three states.

20          And if there are additional conditions or you have

21  problems, contact your counsel.  You can go through New Mexico

22  to get to Texas.  Obviously you can fly to any of these

23  locations.

24          Report as directed to Pretrial Services so after

25  you're done here today, you'll report to Pretrial Services.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    They are here in this building.  You'll also report to the

2    Marshals Service.  You'll need to be processed.  Those are your

3    two trips after this hearing.

4              Anything else to be heard on those two matters?

5              MS. CLARENCE:  I don't believe so, Your Honor.

6              THE COURT:  Thank you.

7              Sir, you'll surrender all travel documents to

8    Pretrial Services by the -- April 6 at 5 p.m., so that's

9    tomorrow at 5 p.m.  Does that give him enough time?

10             UNIDENTIFIED MALE:  His travel documents are

11   currently held by Superior Court in Sacramento, California.

12             THE COURT:  You don't have to worry about that.  If

13   you don't have a passport or other travel document, then

14   there's nothing for you to surrender.

15             MS. CLARENCE:  That's correct, Your Honor.  And those

16   are in the possession of the clerk of the Superior Court.

17             THE COURT:  All right.

18             Does anyone want me to place Mr. Ferrer under oath to

19   ask him that question?

20             MR. LANZA:  Yes, Your Honor.

21             THE COURT:  All right.  We'll handle that in a

22   moment.  We'll do that during your plea proceeding.

23             Sir, you are to maintain weekly contact with your

24   attorney by Friday noon of each week.  And you are to seek

25   approval from Pretrial Services for any financial tractions

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    exceeding $500 with the exception of auto or mortgage payments.

2    So any transactions over $500, you must get approval from

3    Pretrial Services.

4            If you have an ongoing payment that is of that

5    nature, they can give you that authority.  The most important

6    part of this is to coordinate your financial transactions that

7    are above $500 with Pretrial Services except for auto and

8    mortgage payments.  You have to give them notice.

9            Do you have any questions about that, sir?

10           THE DEFENDANT:  I do not, Your Honor.

11           THE COURT:  All right.

12           Let me ask from the Government, will that include any

13   financial payments regarding these corporations as well?

14           MR. LANZA:  I don't believe that there would be any

15   opportunity for him to be making payments on behalf of the

16   corporations once all of this goes through; but, nevertheless,

17   in that possibility, I do -- in the event that arises, yes, he

18   should get approval before making that type of payment.

19           THE COURT:  Ms. Clarence?

20           MS. CLARENCE:  Through Pretrial Services Your Honor?

21   Is that what the Court is suggesting?

22           THE COURT:  If there's only one or two transactions,

23   this would not be difficult.  If he has numerous transactions

24   to conduct for all of these corporations, this could be -- make

25   little sense.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          MS. CLARENCE:  This is the concern that I have, is

2    that there is an ongoing concern.  There is going to be a

3    wind-down.  There are employees, there are leases and the like.

4    There are some practicalities that --

5          THE COURT:  Seems to me if he's making personal

6    transactions, this would apply; but if we're going to talk

7    about corporations, we need to have more information.

8          MR. LANZA:  I agree.  I retract what I said earlier.

9    I think this should only apply to personal expenditures.

10          THE COURT:  All right.  So this applies to you

11    personally.  I can bring -- hold on.

12          Pretrial Services?

13          PRETRIAL OFFICER:  I'm sorry, Your Honor.  In regard

14    to location monitoring, we wanted to make the Court aware that

15    he won't be placed on the program until he reports to the

16    Probation Office in Texas.

17          THE COURT:  And when will that be?

18          PRETRIAL OFFICER:  As soon as he arrives.

19          MR. LANZA:  If we could have just a moment on that,

20    Your Honor.

21          THE COURT:  Sure.

22          (Counsel confer.)

23          MR. LANZA:  I think the parties are all in agreement

24    with Pretrial that he should report to the federal court in

25    Texas by next Friday.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1          MS. CLARENCE:  That's acceptable, Your Honor.

 2          And might I make one clarification on the

 3   automatic -- or the preapproved payments.

 4          THE COURT:  Sure.

 5          MS. CLARENCE:  You mentioned mortgage specifically.

 6   Mr. Ferrer's currently renting.  Would the Court consider

 7   expanding that condition to include payment of an ongoing rent

 8   under a lease obligation?

 9          THE COURT:  Yes.

10          MS. CLARENCE:  Thank you.

11          THE COURT:  So we'll add that.

12          That's a known financial monthly transaction that you

13   have?

14          MS. CLARENCE:  Yes, it is.

15          THE COURT:  If you wish to adjust that transaction,

16   you need to talk to Pretrial Services ahead of time.  So, like

17   I said, if these are monthly payments, you'll work with them,

18   coordinate with them.  Acting in good faith in these is really

19   the bottom line.  You know the terms.  Let me give you an

20   example of something that would be a violation.

21          If you had a $1500 rent payment and you went and got

22   a new apartment at a different complex and increased it to

23   $2500 a month, you have to get approval from them to do that.

24          Does that make sense?

25          THE DEFENDANT:  It does, Your Honor.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1           THE COURT:  Okay.  So I go through all of these

2   specifically.  I think you understand them.  Let me finally

3   review your monitoring requirement.  You're participating in

4   the location monitoring program which requires both curfew, a

5   restriction of your residence as directed by the Pretrial

6   Services officer, and also that you submit to location

7   monitoring.  So that curfew time will be established with

8   Pretrial Services.  You'll report to the Pretrial Services

9   office in Texas by next Friday at 5 p.m. and then you will be

10  set for a curfew requirement through them.

11          Are you going to be residing in Texas?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  All right.  So they will know your

14  address and where the location monitoring will work.  You are

15  to submit to location monitoring as indicated and abide by all

16  the program requirements.  Do not tamper or obstruct with the

17  monitoring and it will be radio frequency monitoring.  Normally

18  I apply the location monitoring technology at the discretion of

19  Pretrial Services.

20          Is there a reason it's different in this case, that

21  we're designating RF?

22          PRETRIAL OFFICER:  The Eastern District of Texas,

23  Your Honor, they don't do GPS monitoring.

24          THE COURT:  Fair enough.

25          PRETRIAL OFFICER:  (Inaudible).

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1        THE COURT:  All right.

2        Any additions or corrections from the Government?

3        MR. LANZA:  No, Your Honor.  Thank you.

4        THE COURT:  You're welcome.

5        Ms. Clarence, anything to add?

6        MS. CLARENCE:  Nothing, Your Honor.

7        THE COURT:  All right.  Mr. Ferrer, do you understand

8   those terms?

9        THE DEFENDANT:  I do, Your Honor.

10       THE COURT:  All right.  I'll sign for them, you'll

11  sign for them as well.  And, again, after this hearing, you'll

12  report to Pretrial Services and the Marshals Service.

13       Before we begin with your matter, we're going to

14  place you under oath.  The importance of your oath is that you

15  answer all questions honestly.  If you do not do that, the

16  Government can prosecute you for the crimes of perjury and

17  false statement.

18       Do you understand that?

19       THE DEFENDANT:  I understand.

20       COURTROOM DEPUTY:  Please raise your right hand.

21       (Whereupon the defendant was sworn.)

22       THE COURT:  I'll ask you many questions, and this

23  case more questions than others.  So if you do not understand

24  one, let me know.  I'll be glad to explain it or rephrase it.

25  You can always talk to your attorney if you need a minute.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1            The first thing I need to do is review two forms that
 2   you've signed.  The first one is labeled Consent of Defendant.
 3   Judge Humetewa will be the District Judge assigned to your
 4   case.  She's a District Judge.  She's been appointed for life.
 5   You have the right to have the Article III District Judge take
 6   your plea.  Instead, you can allow me, a Magistrate Judge, to
 7   take your plea and then I'll recommend she accept it.
 8            Do you agree to allow me to take your plea today?
 9            THE DEFENDANT:  I do.
10            THE COURT:  All right.
11            You also have the right to require the Government
12   obtain an indictment in your case.  An indictment is a document
13   that comes from a grand jury of citizens that hears evidence.
14   They hear the evidence and they decide whether or not charges
15   should be filed in your case.  You can give up your right to
16   indictment and then, instead, plead guilty to an information.
17            Do you agree to give up your right to indictment and
18   instead plead guilty to an information?
19            THE DEFENDANT:  I do, Your Honor.
20            THE COURT:  This form has a signature on it.  Did you
21   sign this waiver of indictment form?
22            THE DEFENDANT:  I did sign it, Your Honor.
23            THE COURT:  What is your full name?
24            THE DEFENDANT:  Carl Allen Ferrer.
25            THE COURT:  How old are you?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1          THE DEFENDANTS:  57.

 2          THE COURT:  How far did you go in school?

 3          THE DEFENDANT:  Graduated college.

 4          THE COURT:  When you spoke with your attorney or

 5   attorneys about your case, did you understand everything you

 6   talked about?

 7          THE DEFENDANT:  I did, Your Honor.

 8          THE COURT:  I'm sure you had questions.  Did you have

 9   enough time to talk to your attorneys about your case?

10          THE DEFENDANT:  I did, Your Honor.

11          THE COURT:  In the last two days, have you taken any

12   medication, alcohol or drugs?

13          THE DEFENDANT:  I take half an Ambien to sleep at

14   night.

15          THE COURT:  All right.  How are you feeling right

16   now?

17          THE DEFENDANT:  I'm okay, Your Honor.

18          THE COURT:  Nervous?

19          THE DEFENDANT:  Nervous, a little unhappy but I'm --

20   I'm okay.

21          THE COURT:  One of the main reasons I ask is to make

22   sure you're thinking clearly, you're making important

23   decisions.  I need to make sure that you're not being affected

24   by some medication so that's a routine question.

25          Are you thinking clearly now?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1          THE DEFENDANT:  I am, Your Honor.

 2          THE COURT:  You seem to me as well to be thinking

 3     very clearly.

 4          Ms. Clarence, have you had any problems talking with

 5     Mr. Ferrer today?

 6          MS. CLARENCE:  No, I have not.

 7          THE COURT:  All right.

 8          Do you believe he's competent to enter a plea of

 9     guilty?

10          MS. CLARENCE:  Yes, I do yes, Your Honor.

11          THE COURT:  When did you review this plea agreement

12     with him?

13          MS. CLARENCE:  The agreement was reviewed in this

14     version yesterday evening.

15          THE COURT:  And did you review all of it with him

16     before he signed it?

17          THE DEFENDANT:  Yes, I did.

18          THE COURT:  Sir, on page 15 of the agreement, again,

19     it appears there's a signature.  Is this your signature?

20          THE DEFENDANT:  That is my signature, Your Honor.

21          THE COURT:  Did you review all of this agreement with

22     your attorneys before you signed it?

23          THE DEFENDANT:  I did, Your Honor.

24          THE COURT:  Anyone forcing you or threatening you to

25     make you plead guilty in this case?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Are you pleading guilty because you're,

3    in fact, guilty of the offense charged?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  All of the agreements in your case must

6    be in writing in your plea document.

7          Do you understand that?

8          THE DEFENDANT:  I do, Your Honor.

9          THE COURT:  Can I have counsel approach?

10          (Discussion at sidebar.)

11          THE COURT:  Mr. Ferrer, you're pleading guilty to the

12   information charged, which is Class D felony offense of

13   conspiracy.  I'll tell you the maximums under the law and then

14   we'll talk about the specific agreements you have for your

15   case.

16          The maximum term of imprisonment that you face is up

17   to five years.  The maximum term of supervised release is three

18   years.  The maximum fine in your case is $250,000 or twice the

19   gain or loss related to the pecuniary gain in your case.  So it

20   can be above $250,000, the fine amount.

21          Do you understand that?

22          THE DEFENDANT:  I understand, Your Honor.

23          THE COURT:  There's a $100 special assessment that

24   also has to be paid.  The Court can impose all of the things

25   that I just mentioned.  Also, if probation is eligible,

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1  probation would be between one and five years if the Court

2  chose to impose probation.

3            Do you understand those maximums?

4            THE DEFENDANT:  I do, Your Honor.

5            THE COURT:  Let me talk about the fine for a moment.

6  Are we -- this is the type of case for which a fine could be

7  imposed and is it contemplated that the loss amount or gain

8  amount in this case is going to be significantly above $250,000

9  if doubled?

10            MR. LANZA:  Yes.

11            THE COURT:  Do you have any sense of what that might

12  be?

13            MR. LANZA:  There is a way that the gain could be

14  considered as much as $500 million.

15            THE COURT:  Those are very high numbers.  There's no

16  way for anyone to tell you now what the potential fine might

17  be.  It sounds as though a fine under the statute, then, could

18  be in the hundreds of millions of dollars.

19            Do you understand that?

20            THE DEFENDANT:  I understand, Your Honor.

21            THE COURT:  Miss Clarence, anything to add to that

22  point?

23            MS. CLARENCE:  Yes.

24            THE COURT:  Do you want to add anything to that

25  point?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          MS. CLARENCE:  No.  Your Honor.  Mr. Ferrer has been

2     duly -- duly understands those terms.

3          THE COURT:  All right.

4          Before sentencing, your judge is going to use a

5     guideline chart to help determine your sentence.  A copy of the

6     chart is in front of you so I want to go through with you --

7     the top part of that chart is the Criminal History Category.

8     If you have no prior convictions, you could be in the lowest

9     category of I on the left.  If you had many convictions, you

10    could be in the highest category of VI on the right.

11         Do you understand generally how that works?

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  All right.  On the left side is the

14    offense level.  It starts with number one.  It goes down to

15    number 43.  A higher number is a more serious offense level.

16    The offense level is based on the type of offense and then the

17    facts surrounding the offense.  And for certain offenses, the

18    amount of loss or potential gain, those are things that might

19    impact that guideline range.  That is a decision that would be

20    made by your judge at sentencing.

21         The reason I tell you is, obviously, in a case like

22    this, if that comes into play regarding your guideline range,

23    that number could go very far down the left side of the chart.

24    It could be a high offense level.  I don't know what it is.  No

25    one can tell you now what that number will be for certain.  I'm

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1    just telling you that those are potentially the things that
 2    could be factored into an offense level.

 3              Does that make sense to you generally?

 4              THE DEFENDANT:  It does, Your Honor.

 5              THE COURT:  Okay.  So what happens at sentencing is
 6    your judge decides your history category and your offense level
 7    and then draws a line from both of those.  Wherever those lines
 8    meet in the middle of chart, that's your guideline range.  It's
 9    in terms of months of recommended imprisonment.  Your judge
10    will consider that range but is not bound by it.

11              Do you understand generally how the middle of the
12    chart works?

13              THE DEFENDANT:  I do, Your Honor.

14              THE COURT:  Regarding your guideline range, right now
15    we do not know what it is.  Your judge will make those
16    decisions at sentencing, so your attorney may have given you an
17    estimate.  It's normal.  But your attorney can only give you an
18    estimate now.

19              Do you understand that?

20              THE DEFENDANT:  I understand, Your Honor.

21              THE COURT:  If that estimate ends up being different
22    than what your judge decides, you'll still be bound by your
23    agreement if it's been accepted by the Court.

24              Do you understand that?

25              THE DEFENDANT:  I understand, Your Honor.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1           THE COURT:  Your judge will consider factors like the

2    nature of the offense, your history, the need to protect the

3    community and the need for deterrence.

4           Also, this will be a federal felony conviction on

5    your record.  So there are collateral consequences.  Let me

6    give you a couple of examples.  You'll lose your right to vote,

7    to serve on a jury, and to possess firearms and ammunition.

8    Those are just some of them.

9           But do you understand that point?

10          THE DEFENDANT:  I understand, Your Honor.

11          THE COURT:  All right.

12          Do you have any questions so far?

13          THE DEFENDANT:  I have no questions, Your Honor.

14          THE COURT:  Okay.  And if you ever need to take a

15   break, just let me know.

16          Let me go through your agreements now.  There are two

17   kinds of agreements in a case.  There are stipulations and

18   recommendations.  A stipulation is something that's a promise.

19   It means you must get the benefit of the stipulation or you

20   could withdraw from the whole agreement.  That would apply to

21   the Government as well.

22          A recommendation is different.  A recommendation is

23   something the Government makes to the judge but the judge can

24   reject a recommendation and you would still be bound by your

25   agreement.  So that's the difference between those two.

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1              Do you understand?

2              THE DEFENDANT:  I understand, Your Honor.

3              THE COURT:  All right.  Let me go through your first

4    agreement.

5              You are required under this stipulation that you will

6    take all steps within your power to immediately shut down the

7    website Backpage.com in the U.S. and other countries in which

8    the website operates.  Those steps will include, but are not

9    limited to, surrendering to the United States the registration

10   account, including the log-in and password information for

11   Backpage.com domain name necessary to operate the various

12   Backpage websites and provide technical assistance to the U.S.

13   to effectuate the shutdown.

14             If you fail to take all steps within your power to

15   immediately shut down the website, the plea agreement will be

16   null and void and the United States will be free to prosecute

17   you for all crimes for which it now has knowledge.

18             In such event, you waive any and all objections,

19   motions and defenses based on the statute of limitations or the

20   Speedy Trial Act or constitutional restrictions in bringing

21   later charges or proceedings.

22             Do you understand your obligations regarding the

23   immediate shutdown?

24             THE DEFENDANT:  I understand, Your Honor.

25             THE COURT:  If there's an argument as to whether you

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1   used best efforts or you did not act immediately, those would

2   be decided by your District Judge, Judge Humetewa.

3              Do you understand that?

4              THE DEFENDANT:  I understand that, Your Honor.

5              THE COURT:  Okay.

6              Does the Government believe any differently?

7              MR. LANZA:  No.  I agree.

8              THE COURT:  Okay.  I don't think there's a need to

9   make it more specific because I don't think we can do that for

10  you today; but if it becomes an issue, that will be decided by

11  Judge Humetewa.

12             Forfeiture assistance.  In your provisions there's a

13  forfeiture agreement.  We'll get into that in a minute.  But

14  here you have a forfeiture assistance section which means that

15  you stipulate and agree that upon entry of your guilty plea,

16  you'll take all steps within your power to forfeit to the

17  United States all corporate assets and other property owned and

18  controlled by Website Technologies, LLC, which owns and

19  operates the Backpage website as well as all corporate assets

20  and other property owned or controlled by Backpage.com, Posting

21  solutions, Amstel River Holdings, AD Tech or UGC Tech.  Such

22  steps will include, but are not limited to, agreeing to the

23  forfeiture of the domain names, servers, intellectual property,

24  trademarks, trade secrets, bank accounts, cryptocurrency, and

25  other financial instruments owned or controlled by such

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    entities.

2              Do you understand that so far?

3              THE DEFENDANT:  I do understand it, Your Honor.

4              THE COURT:  If you fail to comply with that part of

5    the agreement, the agreement would be null and void and the

6    U.S. would have the ability to prosecute you for any and all

7    crimes for which it then has knowledge.  And then you're

8    waiving any objections to motions or defenses based on the

9    statute of limitations, Speedy Trial Act, or constitutional

10   restrictions in bringing later charges or proceedings.

11             Again, those disputes would go to your District

12   Judge.

13             Do you understand that second part of the paragraph?

14             THE DEFENDANT:  I do, Your Honor.

15             THE COURT:  I think it's important to note as well --

16   you said you went through these sections and I'm reading them

17   back to you now, but you understand them all?

18             THE DEFENDANT:  I do, Your Honor.

19             THE COURT:  Okay.  Let me go to your next section.

20   And I do have a question or two for the parties.

21             So it's the expectation of the parties that as close

22   in time as it's practicable, you'll enter a guilty pleas to the

23   Backpage-related charges in California and Texas State Court.

24   And there's a stipulation that, number one, your guilty plea in

25   this case is contingent upon the Court's acceptance of your

United States District Court

                                                                                30

CR-18-00464-PHX-DJH, April 5, 2018

1    guilty pleas in those other two locations.  So if California or

2    Texas rejects your plea, then you could withdraw from this one

3    as well.

4              Do you understand?

5              THE DEFENDANT:  I do, Your Honor.

6              THE COURT:  Okay.  My first question is, has any

7    proceeding begun in either California or Texas?

8              MR. LANZA:  Yes, Your Honor.  California, the

9    proceedings against Mr. Ferrer had been pending for some time.

10   In Texas, it's our understanding that arrangements have been

11   made for him to plead guilty to an information in Texas State

12   Court this coming Monday.

13             THE COURT:  All right.  What happens if he chooses

14   not to go forward with the plea in that jurisdiction?  Is he

15   still bound by this plea?

16             MR. LANZA:  Let me confer with counsel for just a

17   moment.

18             THE COURT:  Okay.

19             Mr. Ferrer, I assume you're going to but I don't

20   know.  I just want you to know what happens with these points.

21   Does that make sense?

22             THE DEFENDANT:  I understand, Your Honor, and I

23   intend to show up to the Court in Texas.

24             THE COURT:  Sure.

25             MR. LANZA:  It's our understanding that the only

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1   agreement here is that he would have the right to withdraw from
 2   this federal plea if a state court rejected a plea agreement.
 3   So if he didn't even get to that point, then that condition
 4   wouldn't be triggered.
 5                THE COURT:  That makes sense.
 6                Do you agree?
 7                MR. BAUM:  Yes, Your Honor.  I completely agree that
 8   is an essential term in this agreement.
 9                THE COURT:  All right.  I just want to make it clear.
10   I assume you're entering pleas of guilty there, but I don't
11   know anything about those cases there.  I try to do my best to
12   make sure that you understand your agreement.  And I think it's
13   worthwhile spending a minute or two on these separate points so
14   I think that's clear to the parties.  If you choose not to
15   enter a plea in California or Texas, you would still be bound
16   by this agreement.
17                Do you understand that?
18                THE DEFENDANT:  I understand that.
19                THE COURT:  Okay.  Concurrency.  You have a
20   stipulation as well that anticipated terms of imprisonment in
21   California and Texas will arise from relevant conduct to the
22   instant offense here, so that means there's a stipulation that
23   any imprisonment imposed in this case will run concurrently
24   with any terms of imprisonment that are imposed in California
25   and Texas.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    So in simple terms, as I read this, if you are

2    sentenced to imprisonment in California and Texas, your

3    sentence here, which would be first, will be ordered at the

4    time of sentencing here to run concurrently with those terms of

5    imprisonment.

6    Do you understand that?

7    THE DEFENDANT:  I understand, Your Honor.

8    THE COURT:  All right.

9    I don't want to go too deep into this.  Are these

10   federal court cases or state court cases?

11   MR. LANZA:  State court cases.

12   THE COURT:  Is there a chance that those state court

13   cases, those judges might choose to run the California and

14   Texas cases consecutively?  I mean, those are all separate

15   agreements.

16   MR. LANZA:  Right.  The way -- it's our understanding

17   that the federal court only has authority to impose concurrent

18   sentences if the state sentences have not yet been imposed yet.

19   So the parties are aware of that, and the parties have made

20   arrangements to do everything they can to ensure that the

21   federal sentencing comes first.  And subdivision D here is

22   written to simply provide that if the state terms are

23   subsequently imposed, then, therefore, the federal judge will

24   order the one that comes first, the federal one, to run

25   concurrent.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1        THE COURT:  Okay.  All right.  One final question.

2   What if they impose probation there?  You can't have concurrent

3   resident probation.  What would happen?

4        MR. LANZA:  Texas, that's not a possibility is my

5   understanding and I also -- I don't know if that's, frankly,

6   even a possibility in the California case as well.

7        THE COURT:  I'll just drop it.  I don't need to bring

8   it up.  So it will be an unknown.  If that happens, you all

9   will just be left to your own devices.  I don't think we have

10  to cover every possible contingency.

11       What I read here is very clear.  If you're sentenced

12  to imprisonment in California or Texas, all you've agreed to

13  here is that your Arizona case is concurrent with these

14  sentences.

15       Do you understand?

16       THE DEFENDANT:  I understand, Your Honor.

17       THE COURT:  Okay.  And I think that would mean that

18  if those two cases ran consecutively, your agreement is only

19  that your federal term here runs concurrently with those

20  sentences.

21       Does that make sense?

22       THE DEFENDANT:  I understand, Your Honor.

23       THE COURT:  Okay.

24       Anything you want to add to that, Ms. Clarence?

25       MS. CLARENCE:  No, Your Honor.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          THE COURT:  Thank you.  All right, sir.

2          The parties stipulate that if you are sentenced to

3   those concurrent terms of federal and state imprisonment,

4   you'll serve all your concurrent time in federal custody.  And

5   it looks like you all agree that your federal sentencing would

6   happen here first.  But you have a stipulation here that your

7   imprisonment on your federal case will begin and you'll serve

8   the current federal term first.

9          Do you understand that?

10         THE DEFENDANT:  I do, Your Honor.

11         THE COURT:  Okay.

12         You can ask for a downward departure or variance

13  based on the statutes and the guidelines.  A departure relates

14  to that left side of the chart I talked about, those offense

15  levels.  Your attorney can ask for reductions in the offense

16  levels on the left side of the chart.  And a variance generally

17  is going outside the guideline range.  So you're free to argue

18  for all of those things.  And it appears here the Government is

19  free as well to argue for upward variances or departures as

20  well so -- as part of this agreement right here in front of me.

21         Do you understand that?

22         THE DEFENDANT:  I understand, Your Honor.

23         THE COURT:  Okay.  Restitution.  Restitution is

24  required under the law.  It requires that victims be paid and

25  be made financially whole for any conduct.  A simple example

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1 would be if an assault resulted in someone's broken arm and you

2 had to pay the doctor bill, that you be required to pay the

3 restitution.

4       In financial crimes, if someone robbed a bank, they

5 have to pay back the money they stole.  In more complicated

6 cases, restitution is still required.  In your case, it's to

7 all victims directly or proximately harmed by your relevant

8 conduct.  So that means not only this charge but any uncharged

9 or other matters for which you've had discovery and relate to

10 this case.  So it's pretty broad.  And your restitution amount

11 here is anywhere from zero to $500 million.

12       Do you understand that range?

13       THE DEFENDANT:  I understand, Your Honor.

14       THE COURT:  Okay.  That's a decision, of course, made

15 by Judge Humetewa and that would be a part of a court order and

16 judgment if it's imposed.

17       You're required to give an accounting of assets and

18 finances to probation or the U.S. Attorney's Office if

19 directed.  Also, you will not and shall not aid or abet any

20 other party to sell, hide, waste, spend, or transfer more than

21 $500 of any such assets that belong to you prior to sentencing

22 unless you have prior approval from the U.S. Attorney's Office.

23       So, again, I read this to apply to you personally.

24 If you have personal assets of any kind, you'll not waste,

25 spend, hide, transfer, or sell anything above $500 without

United States District Court

36

CR-18-00464-PHX-DJH, April 5, 2018

1    approval from the United States.

2              Do you understand?

3              THE DEFENDANT:  I understand, Your Honor.

4              MS. CLARENCE:  It's my understanding, Your Honor,

5    that that would be supervised through Pretrial Services as

6    well.

7              MR. LANZA:  I mean, I think that the pretrial

8    condition, the release conditions, would be authorized by

9    Pretrial Services.  This is separately an agreement that any

10   such expenditure needs to be previously approved by the U.S.

11   Attorney's Office.

12             MS. CLARENCE:  Understood.  And agreed, Your Honor.

13             THE COURT:  And it is.  It's part of your agreement

14   here that's separate from my conditions of release.

15             Sir, do you understand them?

16             THE DEFENDANT:  One moment, Your Honor?

17             THE COURT:  Sure.

18             (Defendant confers with counsel.)

19             THE DEFENDANT:  Your Honor -- I understand, Your

20   Honor.

21             THE COURT:  All right.

22             Acceptance of responsibility.  This can give you a

23   two- or three-level reduction on the left side of the chart.

24   If you qualify for that reduction, the Government will

25   recommend that you get it.  It's a recommendation.  It's not a

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1   requirement but do you understand the Government will make that

2   recommendation if you qualify for acceptance of responsibility?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  All right.

5            The Government will not prosecute you for any

6   offenses committed by you and known to them in connection with

7   the subject matter of this case as described in the factual

8   basis of the agreement.  This is an agreement that binds

9   Arizona only.  It of course doesn't apply to the whole United

10  States.

11           Do you understand that?

12           THE DEFENDANT:  I do, Your Honor.

13           THE COURT:  Okay.  Forfeiture.  There's an extensive

14  forfeiture section here.  It begins on page seven, it goes to

15  page nine and then all the way through 12.  In your case,

16  you're agreeing to give up any right, title, possession, or

17  interest in all of the items that are listed here.  So I'm just

18  going to go through them generally page by page.

19           On page seven there's one through four and then

20  another subsection number one.  Do you understand you're giving

21  up -- you're forfeiting right, title, interest, possession in

22  all of those items?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  On page eight, there's 28 items.  Do you

25  understand those?

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Moving to page nine, you have another six

3    at the top and then four more in the middle and then there's

4    one at the end on the very last line.  Do you understand that?

5              THE DEFENDANT:  The last line.

6              THE COURT:  The real property located at 2531?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Your printout might be a little

9    different.

10             MR. LANZA:  Let me add in addition to the six domains

11   to the top, the four IOLTA accounts in the middle, and one real

12   property at the end, there's also a paragraph starting at line

13   18 that talks about forfeiture of certain bail bond interests.

14             THE COURT:  Okay.

15             MR. LANZA:  It's just not delineated with a number.

16             THE COURT:  I see.

17             Let me go back.  There's real property that is listed

18   on Tumbleweed Way and then your contributions to Millennium

19   Trust prior to 2004 ending in account number '2890.

20             Do you understand those?

21             THE DEFENDANT:  I do, Your Honor.

22             THE COURT:  And, finally, there's a reference to bail

23   bonds and bail bond service, any bond posted in this matter

24   regarding all of those items, do you agree to forfeit those

25   items under the terms listed here?

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1     THE DEFENDANT:  Yes, Your Honor.

2     MR. LANZA:  I'm sorry, Your Honor.  Actually,

3   subdivision B, starting on line 23 on page nine, those are the

4   two items we're not forfeiting.

5     THE COURT:  Thank you.  That's my fault.  I

6   apologize.

7     So that real property -- that may be your residence.

8   The real property and the Millennium Trust, those are not being

9   forfeited.  Do you understand that?

10    THE DEFENDANT:  I do, Your Honor.

11    THE COURT:  I apologize for that error.

12    So do you have any questions about forfeiture?

13    THE DEFENDANT:  No, Your Honor.

14    THE COURT:  This agreement, in simple terms, is a

15  deal you make with the Government.  You get some things, you

16  give some things up.  One of the things you're giving up is

17  your right to appeal in your agreement.  Starting on page six,

18  going to page seven there's a section labeled Waiver of

19  Defenses and Appeal Rights.

20    Did you review that whole paragraph with your

21  attorney?

22    THE DEFENDANT:  I did review it, yes, Your Honor.

23    THE COURT:  You have a right to appeal your case to a

24  higher court or you could file motions in this court attacking

25  your conviction and sentence.  But as a part of this agreement,

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1   you're giving up those rights under the terms that are listed

2   here.

3          Let me give you just one example.  Your judge is

4   going to make guideline-range decisions in your cases.

5   Remember the decisions at the top of the chart and the left

6   side of the chart?  If your judge follows the stipulations in

7   your agreement, you're giving up your right to appeal or attack

8   those decisions subject to the terms that are listed.

9          Do you understand the example?

10         THE DEFENDANT:  I do, Your Honor.

11         THE COURT:  Now, there's an exception if there's

12  prosecutorial misconduct or ineffective assistance by your

13  counsel; but, otherwise, this is a very broad waiver.

14         Do you agree to give up your appeal and attack rights

15  as (inaudible)?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  You can be placed on supervision in your

18  case.  I just wanted to remind you of the importance of that.

19  A supervised release violation in your case, if you were on

20  supervised release and had a violation, can be up to two years

21  of imprisonment.  A probation violation can result in up to

22  five years of imprisonment.

23         Do you understand the importance of supervision?

24         THE DEFENDANT:  I do, Your Honor.

25         THE COURT:  Okay.  I know you're pleading guilty.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1  You're giving up rights by doing that.  Let me review your

2  trial rights with you so I know you understand them.

3          You have a right to a jury trial and you have a right

4  to keep your plea of not guilty.  Do you understand that?

5          THE DEFENDANT:  I do, Your Honor.

6          THE COURT:  If you had a trial, you would be

7  represented by counsel.  You would be present in court.  You

8  would help select a jury of 12 people from the community.  They

9  would decide your case.  And you would be presumed innocent

10 under the law.

11         Do you understand those rights?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  At your trial your attorney would

14 confront and cross-examine witnesses called by the Government.

15 Your attorneys would challenge evidence brought against you.

16 If you wanted to, you could present witnesses and evidence.

17 You could use the power of Court subpoena to make people come

18 to Court.  You don't have to do that.  You don't have to prove

19 anything in a trial.  The Government has the only burden of

20 proof.

21         Do you understand that?

22         THE DEFENDANT:  I do, Your Honor.

23         THE COURT:  You could testify at a trial if you

24 wanted to but you would not have to.  You always have the right

25 to remain silent.  Your silence could never be held against

CR-18-00464-PHX-DJH, April 5, 2018

1   you.

2           Do you understand that right?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  At the end of the trial, you could only

5   be found guilty if the Government proved its case beyond a

6   reasonable doubt and all 12 jurors agreed the Government had

7   met that high burden.

8           Do you understand that as well?

9           THE DEFENDANT:  I do, Your Honor.

10          THE COURT:  By pleading guilty today there would be

11  no trial.  Instead, at some point, you'll be sentenced on this

12  case.

13          Do you agree to give up your right to a jury trial?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  This offense requires the Government

16  prove certain items.  They are listed in your agreement as

17  elements.  It's on page 12.  They have to show that beginning

18  no later then 2004 up to and continuing to March 2018 in the

19  District of Arizona and elsewhere -- and I'm just reading off

20  this page so you're welcome to follow along.  They must show

21  there was an agreement between two or more people to commit one

22  or more of the crimes of the Travel Act -- Facilitate

23  Prosecution, Concealment Money Laundering, International and

24  Promotional Money Laundering, Tractional Money Laundering, and

25  International Concealment Money Laundering.

United States District Court

1          You became a member of the conspiracy knowing at

2     least one of its objects and intending to help accomplish it.

3     And one of the members of the conspiracy performed at least one

4     overt act for the purpose of carrying out the conspiracy.

5          So those are the elements of the offense.

6          There are facts that are listed here for you as well.

7     Before I get into them, I do want to ask your attorney, did you

8     review with Mr. Ferrer the elements of each of those underlying

9     offenses?

10          MS. CLARENCE:  Yes, I did, Your Honor.

11          THE COURT:  Okay.

12          Sir, do you understand generally what those offenses

13     mean?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  All right.

16          Reviewing the facts now, I'm going to read them to

17     you.  You're welcome to follow along as well.  Let me advise

18     you as well, if you have any questions, let me know.

19          In 2004 you company founded the website

20     www.Backpage.com along with M.L. and J.L.  Backpage eventually

21     became the second-largest classified advertising website and

22     the world and during its 14 years of existence, has derived a

23     great majority of its revenue from fees charged in return for

24     publishing advertisements for "adult" and "escort" services.

25          You've long been aware that the great majority of

CR-18-00464-PHX-DJH, April 5, 2018

1   these advertisements are, in fact, advertisements for

2   prostitution services (which are not protected by the First

3   Amendment and which are illegal in 49 states and in much of

4   Nevada).  Acting with this knowledge, you conspired with other

5   Backpage principals (including but not limited to M.L., J.L.

6   S.S., D.H., A.P., and J.V) to find ways to knowingly facilitate

7   the state-law prostitution crimes being committed by Backpage's

8   customers.  For example, you worked with co-conspirators to

9   create "moderation" processes through which Backpage would

10  remove terms and pictures that were particularly indicative of

11  prostitution and then publish a revised version of the ad.

12  Such editing did not, of course, change the essential nature of

13  the illegal service being offered in the ad -- it was merely to

14  create a veneer of deniability for Backpage.  These editing

15  practices were only one component of an overall company-wide

16  culture and policy of concealing and refusing to officially

17  acknowledge the true nature of the services being offered in

18  Backpage's "escort" and "adult" ads.

19          In addition to conspiring to knowingly facilitate the

20  state-law prostitution offenses being committed by Backpage's

21  customers, you also conspired with other Backpage principals

22  (including but not limited to M.L., J.L., S.S., J.B., and D.H.)

23  to engage in various money laundering offenses.  Since 2004,

24  Backpage has earned hundreds of millions of dollars in revenue

25  from publishing "escort" and "adult" ads.  Over time, many

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1  banks, credit card companies, and other financial institutions

2  refused to do business with Backpage due to the illegal nature

3  of its business.  In response, you worked with your

4  co-conspirators to find ways to fool credit card companies into

5  believing that Backpage-associated charges were being incurred

6  on different websites, to route Backpage-related payments and

7  proceeds through bank accounts held in the name of seemingly

8  unconnected entities (including but not limited to Posting

9  Solutions, Website Technologies, and Cereus Properties), and to

10  use cryptocurrency-processing companies (including but not

11  limited to CoinBase, GoCoin, Paxful, Kraken, and Crypto

12  Capital) for similar purposes.

13          Do you understand all of those facts?

14          THE DEFENDANT:  I do, Your Honor.

15          THE COURT:  Did you review them all before today?

16          THE DEFENDANT:  I'm sorry.  Could you say --

17          THE COURT:  Did you review all of those facts before

18  today?

19          THE DEFENDANT:  I did, Your Honor.

20          THE COURT:  Do you agree they are all true?

21          THE DEFENDANT:  I do, Your Honor.

22          THE COURT:  And you agree as well that some of this

23  conduct occurred in the District of Arizona?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Any additions or corrections from the

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1    Government?

2              MR. LANZA:  No, Your Honor.

3              THE COURT:  Ms. Clarence, any additions or

4    corrections?

5              MS. CLARENCE:  No, Your Honor.

6              THE COURT:  Can the Government avow it can prove this

7    case beyond a reasonable doubt?

8              MR. LANZA:  Yes, Your Honor.

9              THE COURT:  Sir, before today, did you have enough

10   time to talk to your attorneys about all of your case?

11             THE DEFENDANT:  I did, Your Honor.

12             THE COURT:  Did they do the things for you in your

13   case you needed to be done?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  Are you satisfied with the work from your

16   attorneys?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  I've asked you many questions so far.

19   Have you understood them all?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  You paid close attention so thank you.

22             Do you have any questions for me about this hearing

23   or your sentencing?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Have all of your answers today been

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

 1  truthful?

 2          THE DEFENDANT:  Yes, Your Honor.

 3          THE COURT:  Regarding the information charging you

 4  with the Class D felony offense of conspiracy to that offense,

 5  how do you plead, guilty or not guilty?

 6          THE DEFENDANT:  Guilty, Your Honor.

 7          THE COURT:  Anything else on the record from the

 8  Government?

 9          MR. LANZA:  One very small housekeeping point.  I

10  think when we were talking about releases conditions under

11  oath, there was going to be a question about whether the

12  passport -- it is in California?

13          THE COURT:  Thank you.  Before I ask you that

14  question -- Ms. Clarence, anything to add for the record?

15          MS. CLARENCE:  Nothing to add for the record, Your

16  Honor.

17          THE COURT:  I'm going to ask Mr. Ferrer about his

18  passport.  Any objection?

19          MS. CLARENCE:  I have no objection.

20          THE COURT:  Mr. Ferrer, reminding you you are under

21  oath.  Do you possess a passport or passport card or travel

22  card or travel documents in your possession or under your

23  control at this time?

24          THE DEFENDANT:  I do not, Your Honor.

25          THE COURT:  Okay.  Of course that doesn't mean just

                    United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1  right here in court.  It can be at a house or another location

2  that you have control over.

3          Do you understand?

4          THE DEFENDANT:  I do understand, Your Honor.

5          THE COURT:  Same answer?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Okay.

8          I do find you knowingly, intelligently, and

9  voluntarily entered a plea of guilty.

10          And, again, do you understand you're pleading guilty

11  to this offense?

12          THE DEFENDANT:  I do, Your Honor.

13          THE COURT:  There's a factual basis for your

14  agreement.  You're certainly competent.  It's clear you

15  understand the agreement and your choices.  I'll recommend to

16  Judge Humetewa that she accept your plea.

17          It's ordered a presentence report be prepared.  Your

18  sentencing date at this time is July 9 at 9:30 a.m. before

19  Judge Humetewa in courtroom 605.  July 9, 9:30 before Judge

20  Humetewa.

21          You'll be subject to the release conditions that I

22  signed for.  You'll report to Probation and -- I mean pretrial

23  Services and the Marshals Service.

24          Anything else from the Government?

25          MR. LANZA:  No, Your Honor.  Thank you.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

1          THE COURT:  Ms. Clarence?

2          MS. CLARENCE:  Nothing further, Your Honor.

3          THE COURT:  All right.  We're adjourned.

United States District Court

CR-18-00464-PHX-DJH, April 5, 2018

```
1

2

3

4                    C E R T I F I C A T E

5

6          I, ELAINE M. CROPPER, court-approved transcriber,

7    certify that the foregoing is a correct transcript, to the

8    best of my skill and ability, from the official electronic

9    sound recording of the proceedings in the above-entitled

10   matter.

11

12         DATED at Phoenix, Arizona, this 25th day of April,

13   2018.

14

15

16

17                                    s/Elaine M. Cropper

18                        _____

19                                    Elaine M. Cropper

20

21

22

23

24

25

                    United States District Court
```