ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Carl Allen Ferrer,<br><br>                    Defendants. | No. 18-CR-00464-SPL<br><br>**GOVERNMENT'S RESPONSE TO CLAIMANT'S, JAMES LARKIN'S, MOTION TO STAY ANCILLARY PROCEEDINGS (Dkt. 44)**<br><br>**[Hearing on Third Party Petitions Nov. 16, 2018, 9:00 a.m.]** |

Plaintiff United States of America (the "Government"), by and through its counsel of record, the United States Attorney's Office for the District of Arizona and Special Assistant United States Attorney John J. Kucera, responds to third-party claimant's, James

Larkin's, Motion to Stay and Postpone Ancillary Hearing.[1] (Dkt. 44). The Government consents to the requested stay – albeit for the different reasons stated below. In support, the Government states as follows:

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

On April 5, 2018, the Government filed a Criminal Information charging the Backpage Defendants[2] with one count of conspiracy to commit various money laundering offenses in violation of 18 U.S.C. § 1956(h). (Dkt. 4). On the same date, pursuant to a plea agreement, the Backpage Defendants plead guilty to an Information charging, among other things, money laundering conspiracy and agreed to forfeit any asset involved in or "traceable to . . . the proceeds of the offense(s), or which was used to facilitate the commission of the offense(s)," to which they were pleading guilty. (Dkt. 8-1; Para. 8.b). The property the Backpage Defendants agreed to forfeit included, but expressly was not limited to, a list of assets that was set forth in the Plea Agreement. (*Id.*).

On May 16, 2018, the Court entered a Preliminary Order of Forfeiture pursuant to Rule 32.2(b). (Dkt. 22). The Order incorporated the list of forfeitable assets set forth in the Plea Agreement and expressly provided that the Court would "retain jurisdiction to enforce this Order, and to amend it as necessary pursuant to Fed. R. Criminal. P. 32.2(e)." (*Id.*).

On June 29, 2018 (*see* Dkts. 28-33) and July 1, 2018 (*see* Dkts. 35-40), several claimants (including most, if not all of the defendants named in *United States v. Lacey, et al.*, collectively, hereafter "Claimants") filed petitions asserting their interests in property listed in the Preliminary Order of Forfeiture. Because the criminal cases of *United States v. Backpage, LLC, United States v. Ferrer, and United States v. Lacey, et al.,* were still ongoing, Special Assistant U.S. Attorney John Kucera contacted Claimants and indicated

---

[1] Defendant James Larkin's Motion to Stay and Postpone Ancillary Hearing (Doc. 44) was made on behalf of claimants Andrew Padilla and Joye Vaught.

[2] These defendants included Backpage.com, LLC, Website Technologies, LLC, Posting Solutions, LLC, Amstel River Holdings, LLC, Ad Tech BV, and UGC Tech Group CV.

that the Government intended to file a motion to stay the ancillary proceedings, pending resolution of the criminal cases, and sought their positions. All of the Claimants objected to the stay.

Then two things occurred. First, in August 2018, Claimants filed an 84-page civil complaint in Delaware State Chancery Court, attempting to collaterally attack assets that were subject to federal forfeiture, in direct contradiction of 21 U.S.C. § 853(n). *Camarillo Holdings, LLC vs. Amstel River Holdings, LLC*, Del. Ct. of Chancery, Case No. 2018-0606-SG, Aug. 16, 2018, Doc. 1. On the same day Claimants these defendants filed their Verified Complaint, they also filed a Motion for Expedited Proceedings, requesting, "trial be scheduled as soon as the Court's calendar permits in the 45-60 day time-frame [sic]." *Id.* at Doc.15. Despite attempts to expedite, Claimants were not able to get a hearing scheduled in that case until November 30, 2018.

Then, on November 6, 2018, the Government notified a number of law firms that had received tainted funds from Backpage that the Government had obtained twelve seizure warrants issued by a Federal Magistrate Judge in the Central District of California, and the Government intended to execute those warrants prior to November 14. The following day, without any prior notice to the Government, Claimants reversed their position and began filing motions to stay the ancillary proceedings in defendant Carl Ferrer's criminal case (Case No. 2:18-cr-00464-SPL, D. Ariz.) and defendant Backpage, LLC's criminal case (Case No. 2:18-cr-00465-SPL, D. Ariz.), claiming that the "Delaware court's ruling will have a direct and material impact on Claimants' petitions and this Court's adjudication of Claimants' interest(s) in the relevant assets." *United States vs. Carl Allen Ferrer*, Case No. 18-CR-00464-SPL (D. Ariz. Nov. 9, 2018), Doc. 44; *see also id.* at Docs. 45-48.[3]

On October 23, 2018, the Honorable R. Gary Klausner, United States District Court for the Central District of California (the "CDCA Court"), granted the Government's *ex*

---

[3] By their own admission, Claimants filed a proceeding in the Delaware Court of Chancery on August 16, 2018 regarding property they knew to be included within the Preliminary Order of Forfeiture. (*See* Dkt. 51, at 3 (citing *Camarillo Holdings, LLC, et al. v. Amstel River Holdings, LLC, et al.* (C.A. No. 2018-0606-SG) [hereinafter, the "Delaware Action"]).

*parte* application (*see* CV 18-06742-RGK-PJW, Dkt. 79) to stay the CDCA civil forfeiture proceedings pending the outcome of related criminal matters in the District of Arizona. Order Granting Stay of Civil Proceedings, *In the Matter of Seizure of: Any and All Funds Held in Republic Bank of Arizona Accounts (and Related Cases)*, No. 2:18-cv-06742-RGK-PJW (Dkt. #85) ("Order to Stay Civil Proceedings") (Attachment A).

Since initiating both the related civil forfeiture proceedings and this criminal proceeding, the Government has indicated to the Individual Defendants, the CDCA Court, and to this Court that it intended to seek a stay of the civil proceedings (including any related ancillary proceedings) pending the outcomes of the criminal matters. With respect to the related civil forfeiture proceedings, the Government first stated, in its Opposition to Claimants' Motion for Return of Property, its intent to "seek a stay of the civil forfeiture proceedings pending the outcome of the criminal case." (CIV Dkt. 51 at 9). The Government's position has been clear, consistent, and remains unchanged, despite Claimants multiple attempts to forum shop and end-run the federal forfeiture process.

## II.    THIS COURT HAS CONTINUING AND EXCLUSIVE JURISDICTION OVER THE CONTESTED PROPERTY

This Court has continuing and exclusive jurisdiction over the contested property pending the ancillary proceeding. Here, (1) the ancillary proceeding is the exclusive procedure for determining third party rights in forfeitable property, (2) 18 U.S.C. § 853(n) bars third parties from objecting in another court, and (3) determination of the state law issues raised by Claimants in the Delaware Action are secondary to a determination of whether the subject funds represent criminal proceeds, because the relation back doctrine would void every contract at issue in the state case.

### A.    Ancillary Proceedings are the Exclusive Procedure for Determining Third Party Rights in Forfeitable Property

Section 853(k) of Title 18 ensures an orderly process and protects a district court's exclusive jurisdiction by establishing § 853(n) as the exclusive procedure for determining

third party rights in criminal forfeiture cases, and expressly bars third parties from contesting the forfeiture in any other forum. Settled Ninth Circuit law recognizes that, "[A]n ancillary proceeding constitutes the only avenue for a third party claiming an interest in seized property." *United States v. Lazarenko*, 476 F.3d 642, 648 (9th Cir. 2007) (citing *Libretti v. United States*, 516 U.S. 29, 44 (1995) (noting that Congress has determined that § 853(n) provides the means to vindicate third-party rights)). The Supreme Court has also held that deferring ownership issues to the ancillary proceeding was a policy choice that Congress was entitled to make, even if it does prolong the forfeiture process. *See Libretti*, 516 U.S. at 44; *see also United States v. Coffman*, 574 F. App'x 541, 564 (6th Cir. 2014) (same). "Congress designated no other means for third parties to vindicate their interest in forfeited property." *Lazarenko*, 476 F.3d at 653.

Thus, the Court should not enter a limited stay pending the Delaware Chancery action; rather, the ancillary proceedings should be stayed pending resolution of the federal criminal matters, as § 853(n) provides the ancillary proceeding as the exclusive procedure for determining third party rights in criminal forfeiture cases.

**B.    21 U.S.C. § 853(n) Bars Third Parties from Objecting in Another Court**

Section 853(n) bars third parties from trying to circumvent the forfeiture procedure by filing an action in another court.  21 U.S.C. § 853(n). This has been repeatedly enforced where defendants tried to initiate mortgage foreclosures or tax sales to improperly reach forfeitable assets. *See*, *e.g.*, *United States v. MacInnes*, 223 F. App'x. 549, 554 (9th Cir. 2007) (holding foreclosure sale against a forfeitable asset is an "action against the United States" and is therefore barred by section 853(k); following *Phillips*); *United States v. Phillips*, 185 F.3d 183, 188 (4th Cir. 1999) (holding third party cannot commence foreclosure action to recover lienholder's interest in forfeited real property even though defendant has stopped paying mortgage; once the property is forfeited, it belongs to the Government under the relation back doctrine, and any attempt at foreclosure is barred by section 853(k)).

1  Section 853(n)'s bar on trying to circumvent the forfeiture procedure has also been

2  enforced when third parties tried to circumvent forfeiture through bankruptcy. *See*, *e.g.*, *In*

3  *re Am. Basketball League, Inc.*, 317 B.R. 121, 127-28 (N.D. Cal. 2004) (holding § 853(k)

4  bars a person from using bankruptcy proceedings to make a collateral attack on an order of

5  forfeiture; that the asserted grounds for relief in bankruptcy would not have allowed

6  claimant to prevail under § 853(n)(6) does not excuse failure to contest the forfeiture in the

7  ancillary proceeding). Courts enforce this statute in a variety of other circumstances as well.

8  *See*, *e.g.*, *Schwartz v. United States*, 593 F. App'x. 663 (9th Cir. 2015) (holding third party

9  cannot use the Federal Tort Claims Act to attack the validity of a forfeiture order); *Bayview*

10 *Loan Servicing, LLC. v. United States*, 288 F. App'x. 63, 65 (4th Cir. 2008) (holding lien

11 holder who missed the deadline for filing a claim in the ancillary proceeding was barred by

12 § 853(k) from filing a motion for a declaratory judgment recognizing its claim under state

13 law); *Roberts v. United States*, 141 F.3d 1468, 1470-71 (11th Cir. 1998) (holding third party

14 may not file lawsuit against the United States claiming pretrial restraining order violated the

15 Takings Clause; defendant's fugitive status does not render § 853(k) unconstitutional;

16 remedy is to challenge the restraining order in the criminal case and file an interlocutory

17 appeal if unsuccessful).

18 The Delaware Action clearly violates the bar on third parties contesting forfeiture in

19 another forum.  Claimants' argument that the Delaware Action is necessary to determine the

20 parties' respective interests under state law ignores federal law that holds that the ancillary

21 proceeding in a federal forfeiture case is the *only* procedure to do so. This Court should stay

22 the ancillary proceeding because, to the extent that the criminal matters do not resolve the

23 parties' respective interests in the assets, the CDCA Court's civil forfeiture proceedings held

24 afterward certainly will. An advisory opinion from the Delaware Chancery court is neither

25 necessary nor legally valid.[4]

26
27 [4] This Court is also entitled to enter an order *sua sponte*, enjoining Claimants from their
   attempts to use the Delaware Action to evade federal jurisdiction over assets subject to
   forfeiture, pursuant to 21 U.S.C. §§ 853(e) & 853(l), as incorporated by 18 U.S.C. §
28 982(b)(1). Those statutes grant this Court jurisdiction to enter orders or to take other action

**C.**   **The Relation Back Doctrine Supersedes Any Contrary State Law and Invalidates All Interests Raised in the Delaware Action**

All basis for third party interests in the assets contained in the Preliminary Order of Forfeiture are voided by the relation back doctrine because legal interest in the property vested in the United States at the time of the offense. Claimants correctly assert that ownership interests are governed by state law, such as whether the contracts are generally enforceable. However, where the relation back doctrine would void state law determinations of the enforceability of contracts or other property interests, federal forfeiture law supersedes conflicting state law. *See United States v. Stevenson*, 834 F.3d 80 (2d Cir. 2016) (under the Supremacy Clause, federal forfeiture preempts the New York State constitution protecting state pension plans from seizure); *United States v. Bollin*, 264 F.3d 391, 422-23 (4th Cir. 2001) (Georgia law exempting IRAs from forfeiture does not insulate the defendant's account from forfeiture in a federal criminal case where the forfeiture of the account is necessary to satisfy a money judgment); *United States v. Infelise*, 938 F. Supp. 1352, 1365 (N.D. Ill. 1996) (bank account forfeited notwithstanding state statute protecting $2,000 in "debtor's" account), *aff'd in part, rev'd in part*, 159 F.3d 300 (7th Cir. 1998).

Long settled law, codified in statute, provides, "All right, title, and interest in [forfeitable] property … vests in the United States upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c); *see also United States v. Stowell*, 133 U.S. 1, 18 (1890). Modernly, this is known as the relation back doctrine. *See, e.g.*, *United States v. Lazarenko*, 476 F.3d 642, 647 (9th Cir. 2007) (holding under the relation back doctrine, the Government's interest in the property vests at the time the defendant commits the crime; "otherwise, a defendant could attempt to avoid criminal forfeiture by transferring his property to another party before conviction"); *United States v. Menaged*, 2018 WL 2376477

---

to preserve and to protect property to insure that the property or its equity will be available for forfeiture to compensate victims. For example, this Court may order that any property named in the Preliminary Order of Forfeiture be deposited into the registry of the court pending the ancillary proceeding, and refusal to do so could result in contempt. *United States v. McCorkle*, 321 F.3d 1292, 1298-99 (11th Cir. 2003).

(D. Ariz. Apr. 12, 2018), *report and recommendation adopted*, 2018 WL 2365715 (D. Ariz. May 24, 2018) (holding government's interest in funds involved in a money laundering conspiracy or funds traceable to such proceeds relates back to the time of the criminal offense, including funds wired into petitioner's bank account from proceeds of underlying fraud).

For the relation back doctrine to apply, the government need not wait for a final order of forfeiture. *See United States v. Zaccagnino*, 2006 WL 1005042, *4 (C.D. Ill. Apr. 18, 2006) (rejecting argument that the Government could not rely on the relation back doctrine in the ancillary proceeding because the doctrine did not take effect until the ancillary proceeding was concluded and the court issued a final order of forfeiture). When, as here, the Government's interest in property involves a conspiracy, the Government's interest vests when the first overt act in furtherance of the conspiracy occurs. *See*, *e.g.*, *United States v. Monea Family Trust I*, 626 F.3d 271, 276 (6th Cir. 2010) (holding where forfeiture is based on a money laundering conspiracy, the Government interest vested on the date when the conspiracy began); *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005) (holding Government's interest vested under section 853(c) at the onset of the drug conspiracy that the property facilitated).

Finally, transactions transferring forfeitable property to third parties may be voided under the relation back doctrine under 18 U.S.C. § 1963(c) and 21 U.S.C. § 853(c). *See*, *e.g.*, *United States v. Gilbert*, 244 F.3d 888, 902 n.38 (11th Cir. 2001) (holding under the relation back doctrine, Government's interest dates back to the time of the act that made the property subject to forfeiture; Congress included the provision to prevent a defendant from attempting to transfer his property to a third party prior to his conviction; third party who objects to application of the relation back doctrine must file a claim in the ancillary proceeding); *United States v. Bennett*, 252 F.3d 559, 563 (2d Cir. 2001) (holding the procedure for recovering criminal proceeds transferred by a defendant to a third party is codified at §§ 853(c) and (n)(6)(B); the Government forfeits the property in the criminal

case, subject to the third party's right to contest the forfeiture in the ancillary proceeding); *United States v. Barnette*, 129 F.3d 1179, 1184-85 (11th Cir. 1997) (holding defendant remained obligated to forfeit value of stock he transferred to his wife to avoid forfeiture). The ability to void transfers to third parties under the Relation Back Doctrine, includes when money is transferred to defense counsel as his or her fee. *See*, *e.g.*, *United States v. Saccoccia*, 433 F.3d 19, 30 (1st Cir. 2005) ("[F]ees paid to attorneys from the criminal proceeds of their clients are not held sacred," they may be "reached by the Government" under the forfeiture laws); *United States v. McCorkle*, 2000 WL 133759, *3, * 32 (M.D. Fla. Jan. 14, 2000) (holding criminal defendant has no right to use fraud proceeds to hire counsel; "the right to counsel of choice belongs solely to criminal defendants who possess legitimate, uncontested assets"; "the privilege to practice law is not a license to share in the proceeds of a fraud").

The relation back doctrine preempts any interest Claimants may have had in the property, and waiting for the Delaware Chancery Court to rule is therefore not only improper, but unnecessary. Here, the first overt act of the conspiracy took place in 2004 but the Claimants alleged "contractual ownership interests" were not created until at least 2013, and they did not assert those interests until after the property was included in a Preliminary Order of Forfeiture. In the Information that Backpage plead guilty to, it states that the money laundering conspiracy began "no later than 2004." (Doc. 4). Claimants in the Delaware Action assert an interest in property stemming from indemnification clauses in sales contracts dated between 2013 and 2016 (*see* Delaware Action, ¶¶ 77, 84, 91, 98, 104, 109, 113, 119, & 134), a litigation management agreement from 2016 (*see id.* at ¶ 147), and for advance fee deposits with law firms made between 2017 to 2018 (*see id.* at ¶¶ 176, 183, 189, 194, 199, 204, 209, 213, 218-19, & 222). Claimants even acknowledge that they have potential criminal liability "aris[ing] out of actions taken (or not taken) while the Medalist Officers served as directors, officers, employees, or agents of the Backpage Entities or affiliates," which pre-date the contracts listed above (*see id.* ¶ 169). As identified in the

Preliminary Order of Forfeiture, the funds set aside to satisfy these contracts are based on criminal proceeds derived from the conspiracy that pre-dates the contracts, the relation back doctrine voids the transfers. The title to the property vested in the United States at the time of the Preliminary Order of Forfeiture for traceable funds connected to the conspiracy starting in 2004, and the Government is thus a pre-existing creditor. Claimants' attempts to seek relief by proceeding in a state court—a proceeding which federal law preempts—should be denied.

## III.   LEGAL STANDARD TO STAY ANCILLARY PROCEEDINGS

Given this Court's continuing and exclusive jurisdiction over the contested property, the Government requests that the ancillary proceedings be stayed pending resolution of the related criminal cases.

### A.   Ancillary Proceedings Are Treated Like Civil Proceedings

The Ninth Circuit, among several others, has long recognized that Section 853(n) ancillary proceedings in the criminal forfeiture context are fundamentally civil in nature and are governed by the rules of civil procedure.[5] In 2000, "Congress adopted Federal Rule of Criminal Procedure 32.2 governing proceedings relating to criminal forfeiture, including third-party petitions." *Pacheco v. Serendensky*, 393 F.3d 348, 352 (2nd Cir. 2004) (citing Fed. R. Crim. P. 32(k)(2)). Rule 32.2 mandates that "when a third party files a petition asserting an interest in property to be forfeited, the court must conduct an 'ancillary proceeding.'" *Id.* (citing Fed. R. Crim. P. 32.2(c)(1)). "That ancillary proceeding, although occurring in the context of criminal forfeiture, closely resembles a civil action." *Id.*; *United States v. Moser*, 586 F.3d 1089, 1093 (8th Cir. 2009) (Section 853(n) "carries many of the hallmarks of a civil proceeding, and it bears few if any hallmarks of a criminal proceeding");

---

[5] *See, e.g., United States v. MacInnes*, 223 F. Appr'x 549, 551 (9th Cir. 2007) (stating that a Section 853(n) petition by a person who is not the criminal defendant is civil in nature because the determination should be governed by "the nature of the petitioner, rather than the statute governing the proceeding"); *United States v. Alcaraz-Garcia*, 79 F.3d 769, 772 n.4 (9th Cir. 1996) (noting that a Section 853(n) proceeding is civil in nature).

*see* Fed. R. Crim. P. 32.2(c)(1)(A) & (B).[6] Thus, under Rule 32.2, a request for stay of a third-party petition in a criminal forfeiture proceeding prior to discovery or a hearing should be treated like a motion to stay a civil forfeiture complaint under Federal Rule of Civil Procedure Rule 62. *See id.* (concerning 12(b) motion to dismiss). Because a stay analysis with respect to civil forfeiture proceedings is equally applicable to related criminal ancillary proceedings, the Government sets forth its arguments based on that premise.

### B.     Two-Pronged Test Requirement Must Be Met To Stay a Civil Proceeding

It is not surprising that inherent conflicts arise from the distinct discovery issues related to simultaneous criminal matters and civil proceedings. *Degen v. United States*, 517 U.S. 820, 825 (1996). To address these conflicts, Congress passed the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), which provides for a stay of civil forfeiture proceedings that are related to a criminal investigation or prosecution. *See* 18 U.S.C. § 981(g)(1). Specifically, Section 981(g)(1) states:

> Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.

Several courts have recognized that CAFRA "broadened the stay relief significantly" of Section 981(g)(1) and removed any requirement that the Government show "good cause" to obtain a stay. *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Spp. 2d 1180, 1183 (C.D. Cal. 2011) (citing *United States v. All Funds Deposited in Account No. 200008524845*, 162 F. Supp. 2d 1325, 1330 (D. Wyo. 2001)). Now, a Court need only determine if civil discovery will adversely affect a related criminal investigation. *See United*

---

[6] "The Advisory Committee explained that because ancillary proceedings can be enormously complicated, 'procedures akin to those available under the Federal Rules of Civil Procedure,' such as motions to dismiss, discovery, and motions for summary judgment, 'should be available to the court and the parties to aid in the efficient resolution of the claims." *Pacheco*, 363 F.3d at 352 (citing Fed. R. Crim. P. 32.2 advisory committee's note to subdivision (c)).

*States v. Real Prop. Located at 149 G St., Lincoln, Cal., Placer Cty.*, APN 008-266-015-000, No. 2:12-CV-0705-TLN-DAD, 2013 WL 2664770, at *3 (E.D. Cal. June 12, 2013) ("Section 981(g)(1) does not require a particular showing but does instead require the court to determine whether civil discovery will interfere with the criminal investigation").

Thus, for these civil forfeiture and ancillary proceedings to be stayed, this Court need only determine that (1) these proceedings are related to a criminal proceeding or investigation, and (2) any civil discovery will adversely affect the Government's ability to conduct a related criminal investigation or prosecution in the related criminal matter. *See* 18 U.S.C. § 981(g)(1). If the Government satisfies this two-pronged test, "the Court is obligated by the plain language of the statute to grant the Government's request for a stay." *6415 N. Harrison Ave.*, 2012 WL 4364076, at *6.

To this end, district courts within the Ninth Circuit "have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding caused by the civil discovery." *One 2008 Audi R8 Coupe*, 866 F. Supp. 2d at 1185 (emphasis in original) (citing *Florida Capital Bank*, WL 3458189 at *1). Further, for these same reasons, courts will stay civil forfeiture matters based on anticipated discovery issues. *United States v. Real Prop. Located at 149 G St., Lincoln, Cal., Placer Cty., APN 008-266-015-000,* No. 2:12-CV-0705-TLN-DAD, 2013 WL 2664770, at *3 (E.D. Cal. June 12, 2013) ("Courts have long stayed civil forfeiture cases based upon anticipatory discovery issues").

### 1.    The Ancillary Proceeding Is Related To The Criminal Proceeding

Section 981(g)(4) defines the terms "related criminal case" and "related criminal investigation" as follows:

> [A]n actual prosecution or investigation in progress at the time at which the request for the stay, or any subsequent motion to lift the stay is made.  In determining whether a criminal case or investigation is 'related' to a civil forfeiture proceeding, the court shall consider the degree of similarity between the parties, witnesses, facts, and circumstances involved in the two

proceedings, without requiring an identity with respect to any one or more factors.

18 U.S.C. § 981(g)(4). Courts within the Ninth Circuit have consistently found that "[w]here common facts, similar criminal offenses, and common parties exist, the criminal and civil cases are considered to be 'related.'" *149 G St., Lincoln, Cal.,* 2013 WL 2664770, at *4; *see One 2008 Audi R8 Coupe*, 866 F. Supp. 2d at 1183; *6415 N. Harrison Ave.*, 2012 WL 4364076, at *3.

Even though the ancillary proceedings and the related criminal matter concern the same assets, bank accounts, corporate entities, and defendants/Claimants, the Government anticipates that Claimants will argue the ancillary proceeding is somehow unrelated. (*See* CIV Dkt. 80 at 3 (arguing that the civil forfeiture case is unrelated to this matter because "[u]nder this test it is not enough to show that the cases are related")). However, the notion that any related civil forfeiture proceedings (and any related ancillary proceedings) are unrelated to this criminal case is unsupportable. Criminal prosecution is already underway, and a trial date has been set. In addition, the "degree of similarity" between the assets, witnesses, facts, circumstances, and the Individual Defendants is substantial, if not, exactly the same. As such, the anticipated ancillary proceedings are related to this criminal matter, thereby satisfying the first prong of § 981(g)(1).

**C.    Any Discovery Will Adversely Affect The Criminal Matter**

Section 981(g)(1) does not require the Government to demonstrate a particular showing of prejudice; the Government need only demonstrate likely or anticipated prejudice or harm. Section 981(g)(1) "does not require a particularized showing of prejudice or specific harm as contemplated by [the Individual Defendants]." *Floridal Capital Bank*, 2009 WL 3458189 at *2. The only thing this Court "must determine is whether civil discovery will interfere with the [related] criminal [proceeding]." *Id.* "Courts have routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding caused by the civil discovery." *One 2008 Audi Coupe*, 866 F. Supp.

2d at 1185 (emphasis in original). Indeed, "[t]o allow [the Individual Defendants] to participate in civil discovery would require the Government to reveal information and evidence collected in support of the indictment ... the Government ordinarily need not reveal all of its evidence during the course of criminal discovery." *United States v. Assorted Firearms-Motorcycles & other Pers. Prop.*, 677 F. Supp. 2d 1214, 1217 (C.D. Cal. 2009).

It is more likely than not, and the Government anticipates accordingly, that the parties will need conduct a discovery process in connection with the related ancillary proceeding, leading to the discovery of materials and evidence, otherwise impermissible, should this Court decline to grant a stay. In this ancillary proceeding, the Government expects that the Individual Defendants will seek to introduce declarations from Michael Lacey, Ramon Larkin, Scott Spear, Troy Larkin, Antoinette Thomas, John Brunst, Jim Larkin, and Margaret Larkin, as evidenced by the declarations attached to the Motion for Return of Property recently filed in the CDCA Court. (*See* CIV Dkt. 6, DECLARATIONS). Each of those declarations seek to introduce evidence relating to the ownership and/or control of certain assets the Government seeks to forfeit in the criminal proceedings. Further, the Declaration of John Brunst seeks to introduce evidence of financial records, audit reports, and sources of the assets related to the instant forfeiture action. (*See id.*, DECLARATION OF JOHN BRUNST). Additionally, Defendants have sought to introduce declarations from Paul Cambria, counsel to Mr. Michael Lacey. There is nothing on the record that suggests Defendants would not seek the same or similar discovery in a related ancillary proceeding.

In addition, the Individual Defendants submitted multiple petitions advancing their third party interest rights over the defendant assets. (*See* Dkts. 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 45). Each petition alleges, among other things, that (1) the defendant assets "do not contain or constitute criminal proceeds", (2) Defendants' interest in defendant assets "precedes" that of the Government's, (3) Defendant's "acquired" their interest in the defendant assets "As a bona fide purchaser for value," and (4) the Defendants' interest in the defendant assets is "superior to" the Government's.

Should the Government's request for a stay of ancillary proceedings be denied, the Government intends to seek discovery from each declarant, including deposing each declarant and/or cross-examining each declarant at any hearing. The Individual Defendants admit that "such a hearing would require testimony…" (Dkt. 45 at n.2); and discovery, including depositions and eliciting testimony, will be necessary in order that the Government may mount an appropriate defense.

The Individual Defendants should not be afforded an opportunity to receive early and broader civil discovery that is otherwise not available to them in the related criminal proceeding. The Government reiterates that, in order for it to fully and fairly oppose any assertion made by Defendants in any related ancillary proceeding, the Government would need to explain its position, providing insight into the Government's thought processes and the need to walk through and explain what inferences to draw (or not to draw). To ensure the integrity of the related criminal proceeding, the Government should not be required to disclose such evidence.

### D.     A Stay Protects Defendants' Rights Against Self-Incrimination

Consistent with Section 981(g)(1), and in order to avoid implicating the rights of criminal defendants, it is the Government's practice to seek to stay forfeiture proceedings related to criminal matters (including any ancillary proceedings). The Government seeks or agrees to such stays in order to avoid requiring defendants to elect between (1) subjecting themselves to civil discovery and (2) invoking their Fifth Amendment rights (which may carry civil consequences). If a related ancillary proceeding is allowed to proceed at this time, the necessary discovery for such proceeding will not only impair the Government's ability to prosecute this criminal proceeding, but will implicate the Individual Defendants' Fifth Amendment rights. *See United States v. 4 Certain Real Prop. & Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y.*, 55 F.3d 78, 83 (2nd Cir. 1995) (claimant in a civil forfeiture case faces the dilemma of remaining silent and allowing the forfeiture or testifying against the forfeiture and exposing himself to incriminating admissions).

A related ancillary proceeding would subject the Individual Defendants to possible conflict with any and each defendants' right against self-incrimination in the pending criminal proceeding. This is because the Government would be entitled to address Defendants' allegations, assertions, and any affirmative defenses they may raise in an ancillary proceeding. Notably, certain Individual Defendants have already asserted their Fifth Amendment rights and have declined to provide any additional information related to their claims in the ancillary proceeding. (Dkts. 29 (defendant Padilla) at 25 ("Petitioner respectfully declines to provide additional information in support of his claim at this time in reliance upon the protections against self-incrimination provided by the Fifth Amendment to the United States Constitution"), 30 (defendant Vaught) at 25 (same), and 34 (defendant Hyer) at 23 (same)). This alone warrants a stay of any related ancillary proceeding.

### E.   A Stay Promotes Equity, Judicial Economy, and Public Policy

Allowing any related ancillary proceeding to go forward would unnecessarily allow Claimants to use the coercive power of the court to conduct the type of "broad-ranging preliminary inquiry" (*Harris v. Nelson*, 394 U.S. 286, 297 (1969) (analyzing the effect of potential discovery in the Rule 26(b) context)) that "could substantially hamper the criminal proceeding ... and may provide improper opportunities for [the Claimants] to discover the details of ... [the] pending criminal prosecution." *United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 567 (1983). Such a result would allow the claimant to "profit from his own wrong," *Illinois v. Allen*, 397 U.S. 337, 345 (1970), by inevitably granting Claimants several advantages over the Government concerning the related criminal proceeding.

For example, gaining discovery prior to the criminal trial allows Claimants to enlist the Court's help to probe the extent to which the prosecution's case may be undermined. This only serves to enable Claimants "to frustrate the truth-seeking function of [that] trial by presenting [a] tailored defense[] insulated from effective challenge." *Doyle v. Ohio*, 426 U.S. 610, 617 n.7 (1976); *see Taylor v. Illinois*, 484 U.S. 400, 417 (1988) ("After all, the

court ... has a vital interest in protecting the trial process from the pollution of perjured testimony."). A denial of the Government's request for a stay presents an unnecessary danger that no court should entertain.

Finally, as a matter of equity, because the assets sought to be forfeited in the recently filed civil cases are essentially the same assets sought in this criminal matter, any disclosures made in the civil discovery process (including any related ancillary proceeding) would be detrimental to the Government's ability to effectively prosecute the criminal matter. Such an outcome is both inherently unfair and prejudicial to the Government.

## IV.    CONCLUSION

A stay of the ancillary proceeding is proper and necessary to prevent disclosure of the Government's thought processes and legal strategy, information to which Claimants are not entitled to at this time, and to ensure the integrity of this criminal prosecution. For all

/ / /

/ / /

the foregoing reasons, pending the outcome of the Government's related criminal proceeding, the Government respectfully requests that this Court stay any related ancillary proceeding for all purposes except the filing of claims and petitions. A Proposed Order is being lodged contemporaneously with this application.

Respectfully submitted this 14th day of November, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s John J. Kucera*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

BRIAN BENCZKOWSKI
Assistant Attorney General
U.S. Department of Justice
Criminal Division

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice
Criminal Division
Child Exploitation and Obscenity Section

### Certificate of Service

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Jonathan Baum, Nanci Clarence, David Botsford, Daniel Quigley, Anthony Bisconti, Adam Page, Erin McCampbell, Paul Cambria, Jr., Kenneth Miller, Thomas Bienart, Jr., Whitney Bernstein, Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, Michael Piccarreta, Stephen Weiss, Ariel Neuman, Gary Lincenberg, and Gopi Panchapakesan

*s/ Shannen Beckman*
U.S. Attorney's Office