Jonathan M. Baum (CA SBN 303469)
Joy Holden* (DC SBN 90021283)
**HWG LLP**
1919 M St. NW, 8th Floor
Washington, DC 20036
Telephone: (202) 730-1300 / Facsimile: (202) 730-1301
jbaum@hwglaw.com
jholden@hwglaw.com          *Pro hac vice (pending)
Attorneys for Defendant
CARL FERRER

K C Maxwell (CA SBN 214701)
**Maxwell Law PC**
23 Geary St., Ste. 600
San Francisco, CA 94108
Telephone: (415) 494-8887 / Facsimile: (415) 329-1985
kcm@kcmaxlaw.com
Attorney for Defendant
DAN HYER

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. CR-18-464-DJH |
| Plaintiff, | CASE NO. CR-18-422-DJH |
| v. | |
| Carl Ferrer and Dan Hyer | **RESPONSE RE: JOINT AND SEVERAL LIABILITY FOR RESTITUTION FOR CARL FERRER AND DAN HYER** |
| Defendants. | |

This letter is written in response to the Court's July 28, 2025 order requesting that the parties inform the court "if there are any grounds or reasons why restitution as to Defendant Ferrer should not be joint and several with Defendants Spear (3) and Brunst (4) . . . in light of Defendant Ferrer's plea of guilty to Conspiracy to commit Travel Act offenses from 2004 to 2018." Order, ECF No. 162, Case No. 2:18-cr-464-DJH. The same order was issued with respect to Defendant Hyer. Order, ECF No. 2364, Case No. 2:18-cr-422-DJH.

There are several reasons why Mr. Ferrer and Mr. Hyer should not be held jointly and severally liable. The Court has the discretion to award restitution amounts based on the individual circumstances of each defendant. Under 18 U.S.C. § 3664(h), courts have discretion to apportion restitution among defendants based on their respective contributions to the victims' losses and their economic circumstances.[1] In ordering restitution, the court should consider two factors: (1) each defendant's "level of contribution to the victim's loss"; and (2) the "economic circumstances of each defendant." 18 U.S.C. § 3664(h). This statutory framework allows the court to ensure that liability is distributed equitably, reflecting the degree of culpability and financial capacity of each defendant.

**1. Mr. Ferrer and Mr. Hyer's Level of Contribution to the Victims' Loss**

Unlike the true owners of Backpage, Ferrer and Hyer were functionally employees of the Company, even after the owners "sold" the Company to Ferrer in 2015.

Ferrer began working for the Company in 1996 as a mid-level employee in charge of classified ad sales in Dallas after a career selling classified advertising at newspapers in small markets in Wisconsin, Florida, and Colorado. Tr. of Ferrer Trial Test. at 83:10–25, ECF No. 1786, *United States v. Lacey*, No. 2:18-cr-422-DJH (D. Ariz. Sept. 13,

---

[1] Even if the Court orders joint and several restitution, it can still assign different amounts or terms to each defendant. See United States v. Klein, 476 F.3d 111, 114 (2d Cir. 2007) (remanding restitution order to district court because "district court's view that the Probation Department cannot administer varying restitution amounts that are joint and several is 'mistaken.'").

2023). In 2004, Scott Spear supervised Ferrer for the new Backpage project. In 2006, Scott Spear hired Dan Hyer to supervise the marketing team at Backpage. *Id.* at 15:6–9.

Ferrer originally hired Hyer in 1998 to work as a Classified Sales Representative at the Dallas Observer to sell print ads in classified section. In 2006, at the request of Scott Spear, Ferrer hired Dan Hyer to work part-time for Backpage.com (10 percent of his employment working hours, and 90 percent of his employment working for the Dallas Observer). Over the subsequent 4 to 5 years, again at the request of Scott Spear, Hyer's part-time responsibilities slowly increased from 10 percent, to 20 percent, to 50 percent, to 75 percent time on Backpage. Hyer was paid by the Dallas Observer through 2012. Hyer's management responsibilities were on the same level of Andrew Padilla: Hyer reported to Ferrer, who reported to Scott Spear. Hyer's job function was marketing Backpage.

In April 2015, Backpage was facing mounting challenges from banks and regulators. To alleviate concerns about ownership and culpability, Spear, Brunst, Larkin, and Lacey conducted a sham operation to "sell" Backpage to Ferrer. Tr. of Ferrer Trial Test. at 57:12–14, ECF No. 1813, *United States v. Lacey*, No. 18-cr-422-DJH (D. Ariz. Sept. 22, 2023) ("My duties were the same that I had as an employee … and I had to sign an Employment Agreement."). Not a dollar changed hands during this operation, because Ferrer never had the money to buy Backpage. Ferrer "owed" Spear, Brunst, Larkin, and Lacey more than $600 million dollars for the sale. Tr. of Ferrer Trial Test. at 78:5, ECF No. 1786, *United States v. Lacey*, No. 18-cr-422-DJH (D. Ariz. Sept. 13, 2023) ("I did not write them a check. I did not have the money.").

Ferrer's "ownership" of Backpage simply allowed him to continue to operate as an employee. Tr. of Ferrer Trial Test., ECF No. 1838 at 58 ("It's a plan that the sellers put together . . . and I'd be an employee, essentially."). Mr. Ferrer collected his regular salary and bonus. *Id.* at 56:12 ("I would continue to draw a salary that was negotiated."). He did not get any additional financial benefits from "ownership" of Backpage. ("[T]he funds that would go to the Backpage accounts [Brunst, Spear, Larkin, and Lacey] would take as

1  payments for principal and interest so whatever money came in, they would find a way to
2  get swept to their accounts, their bank accounts.").
3       Ferrer and Hyer's roles in Backpage were fundamentally different from those of
4  Spear and Brunst. Neither Ferrer nor Hyer had the authority to make operational
5  decisions about Backpage, neither Ferrer nor Hyer could make hiring decisions, and
6  neither Ferrer nor Hyer shared in the profits of Backpage like a true owner. Hyer's
7  position allowed him to offer strategy and suggestions on ways to grow the site, but he
8  could not ultimately decide on the implementation of these policies. Hyer held a similar
9  level position to Padilla and Vaught, who were both acquitted.

10 ████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████
12 ███████████████████████████████████████████████████████████████
13 █████████████████████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████████████████
15 ██████████████████████████████████████████████████████████████████████
16 █████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████
18 ██████████████████████████████████████████████████████████████████████
19 ████████████████████████████████████████████████████████████████████████
20 ████████████████████████████████████████████████████████████████████████
21 ████████████████████████████████████████████████████████████████████████
22 ██████████████████████████████████████████████████████████████

23    **2. Economic Circumstances of Mr. Ferrer and Mr. Hyer**
24       Under 18 U.S.C. § 3664(h), the court should consider the relative economic
25  circumstances of each defendant when ordering restitution.
26       Spear, Brunst, Larkin, and Lacey made millions of dollars during their nearly
27  twenty years as Backpage owners. In total, Larkin made roughly $140 million from
28  2013–2016, Lacey made roughly $145 million from 2013–2016, Spear made roughly

1  $10.1 million from 2013–2015, and Brunst made roughly $19.8 million from 2013–2015.
2  Tr. of Trial Proceedings at 48:10–16, 50:23–25, 51:1–3, 54:24–25, 55:1–5, 15–20, ECF
3  No. 1290, *United States v. Lacey*, No. 18-cr-422-DJH (D. Ariz. Sept. 4, 2021). In
4  contrast, Mr. Ferrer earned only a small fraction of that as an employee. More
5  importantly, Mr. Ferrer promptly took responsibility for his actions—he pled guilty and
6  gave up every dollar that he had that was tied to Backpage. This stands in stark contrast
7  with Lacey, Spear and Brunst, who fought forfeiture and ended up with a windfall that let
8  them walk away with millions of dollars in Backpage money.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ferrer
11  forfeited over $2 million in assets as part of his plea agreement. Ferrer is managing health
12  problems, retired, remarried and living on his savings. In addition, Ferrer has significant
13  liabilities for legal expenses with proceedings in California, Texas, dozens of civil cases,
14  and ongoing spousal support obligations.

15      Ferrer's net worth is primarily composed of his residence of 29 years and his pre-
16  Backpage contributions to his retirement account. The same is true for Hyer. Pursuant to
17  his plea agreement, Hyer forfeited his checking and savings accounts, leaving him with
18  his residence, which he has lived in with his wife[2] since 2004. He has a checking account
19  with a small balance, no savings account, and a small retirement account. Hyer also has
20  two small investment accounts which he has not contributed to, or withdrawn funds from,
21  since his time in working part time for Backpage and part-time for the Dallas Observer.

22      Under 18 U.S.C. § 3664(h), Ferrer and Hyer's level of contribution to the victims'
23  loss and their economic circumstances do not warrant joint and several liability. ▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Instead, the Court should apportion restitution to

---

[2] Mr. Hyer's wife had a stroke in 2004 and other chronic illnesses have prevented her from working and has required Mr. Hyer's continued care.

reflect Ferrer's and Hyer's lesser degree of culpability and economic circumstances. This approach aligns with the text and purpose of 18 U.S.C. § 3664(h).

### 3. Restitution Proposal

As the Court knows, Spear and Brunst have appealed their restitution order. That appeal stays the Court's restitution order imposed on July 3, 2025. Order, ECF No. 2356, *United States v. Lacey*, No. 18-cr-422-DJH (D. Ariz. Sept. 13, 2023). Should the Court impose joint and several liability, Ferrer and Hyer ask that the Court stay imposition of its order until the conclusion of the appeal by Spear and Brunst so that the order goes into effect at the same time for all defendants.

Dated: September 3, 2025            **HWG LLP**

By: */s/ Jonathan M. Baum*
Jonathan M. Baum
Joy L. Holden
Attorneys for Defendant Carl Ferrer

By: */s/*
KC Maxwell
Attorney for Defendant Dan Hyer

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

                              */s/ Jonathan M. Baum*
                              Jonathan M. Baum