ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
DOMINIC LANZA (Cal. Bar No. 225989, dominic.lanza@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>TN: Carl Allen Ferrer<br>Carl Ferrer,<br><br>　　　　　Defendant. | CR-18-464-PHX-DJH<br><br>**PLEA AGREEMENT**<br><br>~~SEALED~~ |

Plaintiff, United States of America, and the defendant, Carl Ferrer, hereby agree to dispose of this matter on the following terms and conditions:

1.　**PLEA**

The defendant will plead guilty to an Information charging the defendant with a violation of 18 United States Code (U.S.C.) § 371, Conspiracy, a Class D felony offense.

cc: AUSA, Defense Counsel, USPO

2.   **MAXIMUM PENALTIES**

   a.   A violation of 18 U.S.C. § 371 is punishable by a maximum fine of $250,000 (or, if any person derived pecuniary gain from the offense, or if the offense resulted in pecuniary loss to a person other than the defendant, not more than the greater of twice the gross gain or twice the gross loss), a maximum term of imprisonment of 5 years, or both, and a term of supervised release of 3 years. A maximum term of probation is five years.

   b.   According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

   (1)   make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

   (2)   pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

   (3)   serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

   (4)   pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

   c.   The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

3.   **AGREEMENTS REGARDING SENTENCING**

   a.   Immediate Shutdown of Backpage Website: The defendant stipulates and agrees that, upon entry of his guilty plea, he will take all steps within his power to immediately shut down the website www.backpage.com ("Backpage") in the United

States and all other countries in which the website operates. Such steps shall include, but not be limited to, surrendering to the United States the registration account, including login and password information, for the www.backpage.com domain name necessary to operate the various Backpage websites and providing technical assistance to the United States to effectuate the shutdown. If the defendant fails to take all steps within his power to immediately shut down the website, this plea agreement shall be null and void and the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.

        b.     <u>Forfeiture Assistance</u>: The defendant stipulates and agrees that, upon entry of his guilty plea, he will take all steps within his power to forfeit to the United States all corporate assets and other property owned or controlled by Website Technologies, LLC ("Website Technologies"), which owns and operates the Backpage website, as well as all corporate assets and other property owned or controlled by Backpage.com, LLC, Posting Solutions LLC, Amstel River Holdings, LLC, Ad Tech BV, and UGC Tech Group CV. Such steps shall include, but not be limited to, agreeing to the forfeiture of the domain names, servers, intellectual property, trademarks, trade secrets, bank accounts, cryptocurrency, and other financial instruments owned or controlled by such entities. If the defendant fails to comply with this agreement, this plea agreement shall be null and void and the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings.

        c.     <u>California And Texas Proceedings</u>: It is the parties' expectation that, concurrently, or as close in time as is practicable to the time the defendant enters his guilty plea in this case, the defendant also will enter guilty pleas to Backpage-related charges in California and Texas state court. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the

United States and the defendant stipulate that the defendant's guilty plea in this case is contingent upon the state courts' acceptance of his plea agreements in the California and Nueces County, Texas matters. If either of those plea agreements is rejected, the defendant will be afforded an opportunity to withdraw his guilty plea in this case.

      d.    <u>Concurrency With State Sentences</u>: Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the anticipated terms of imprisonment in the aforementioned California and Texas proceedings will arise from "relevant conduct to the instant offense of conviction." Accordingly, under U.S.S.G. § 5G1.3(c), the United States and the defendant stipulate that any term of imprisonment imposed in this case shall run concurrently with any terms of imprisonment subsequently imposed in the aforementioned California and Texas proceedings.

      e.    <u>Federal Custody</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that, to the extent the defendant is sentenced to concurrent terms of federal and state imprisonment, the defendant will serve all concurrent time in federal custody.

      f.    <u>Ability To Request Downward Departure/Variance</u>: The defendant reserves the right to request a downward departure or a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). The defendant understands that the government is free to oppose any such request.

      g.    <u>Restitution</u>. Pursuant to 18 U.S.C. § 3663 and/or 3663A, the defendant specifically agrees to pay full restitution, regardless of the resulting loss amount but in no event more than $500 million, to all victims directly or proximately harmed by the defendant's "relevant conduct," including conduct pertaining to any dismissed counts or uncharged conduct, as defined by U.S.S.G. § 1B1.3, regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. The defendant understands that such restitution will be included in the Court's Order of Judgment and that an unanticipated restitution amount will not serve as grounds to withdraw the defendant's guilty plea or to withdraw from this plea agreement.

h. <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer more than $500 of any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

i. <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the subject matter described in the factual basis of this agreement.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

- 5 -

**5.   COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a. If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b. If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, or if the state courts considering related claims in California and Texas reject the defendant's plea agreements in those states, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings, and any statements made by the defendant at the time of his change of plea or sentencing in this case may not be used against him in any subsequent hearing, trial, or proceeding.

**6.   WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall

not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

8. **FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Pursuant to 18 U.S.C. § 981(a)(1)(C), the defendant agrees to forfeit, and hereby forfeits, all interest in any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. Such property includes, but is not limited to, all right, title, and interest in funds held in the following bank accounts:

(1) Republic Bank of Arizona account number x2912

(2) Republic Bank of Arizona account number x2500

(3) Green Bank account number x4832

(4) Plains Capital Bank account number x1098

Such property further includes, but is not limited to, all right, title, and interest in the following domain names:

(1) atlantabackpage.com

| | | |
|---|---|---|
| 1 | (2) | backpage.be |
| 2 | (3) | backpage.com |
| 3 | (4) | backpage.com.br |
| 4 | (5) | backpage.cz |
| 5 | (6) | backpage.dk |
| 6 | (7) | backpage.ee |
| 7 | (8) | backpage.es |
| 8 | (9) | backpage.fi |
| 9 | (10) | backpage.fr |
| 10 | (11) | backpage.gr |
| 11 | (12) | backpage.hu |
| 12 | (13) | backpage.ie |
| 13 | (14) | backpage.it |
| 14 | (15) | backpage.lt |
| 15 | (16) | backpage.mx |
| 16 | (17) | backpage.net |
| 17 | (18) | backpage.no |
| 18 | (19) | backpage.pl |
| 19 | (20) | backpage.pt |
| 20 | (21) | backpage.ro |
| 21 | (22) | backpage.si |
| 22 | (23) | backpage.sk |
| 23 | (24) | backpage.us |
| 24 | (25) | backpage-insider.com |
| 25 | (26) | bestofbackpage.com |
| 26 | (27) | bestofbigcity.com |
| 27 | (28) | bigcity.com |
| 28 | (29) | chicagobackpage.com |

|  |  |  |
|---|---|---|
| (30) | denverbackpage.com |
| (31) | newyorkbackpage.com |
| (32) | phoenixbackpage.com |
| (33) | sandiegobackpage.com |
| (34) | seattlebackpage.com |
| (35) | tampabackpage.com |

Such property further includes, but is not limited to, all right, title, and interest in any funds remaining in the following IOLTA bank accounts at the conclusion of litigation (with the understanding that the funds currently deposited in those IOLTA bank accounts may only be withdrawn by counsel based on the provision of legal services):

    (1) First Republic Bank IOLTA Account x6180

    (2) First Republic Bank IOLTA Account x6255

    (3) First Republic Bank IOLTA Account x5978

    (4) All funds previously deposited in Wells Fargo IOLTA Account x7091 to fund the criminal defense of Backpage.com, LLC, Website Technologies, LLC, Posting Solutions LLC, Amstel River Holdings LLC, Ad Tech BV, and/or UGC Tech Group BV

Such property further includes, but is not limited to, all right, title, and interest in any funds previously advanced to a bail bond service (with the understanding that, should the defendant not be required to post a bond in this matter, he will take immediate steps to recover any funds previously advanced to a bail bond service and surrender those funds to the United States for forfeiture).

    b. The United States and the defendant further agree that the following assets are not subject to forfeiture, either in this criminal proceeding or in a future administrative or civil forfeiture proceeding, because the assets were obtained solely with non-Backpage related funds (and, therefore, cannot lawfully be forfeited under the relevant statutes):

    (1) The real property located at 2531 Tumbleweed Way, Frisco, Texas.

    (2) The defendant's pre-2004 contributions to Millennium Trust IRA account number x2890.

  c. The defendant further agrees that, other than paragraph 8(b) above, nothing in this agreement shall be construed to protect him from administrative or civil forfeiture proceedings or to prohibit the United States from proceeding with and/or initiating an action for civil forfeiture (either with respect to the property identified above or with respect to additional property that is not subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) but may be subject to forfeiture under other provisions).

  d. The defendant further agrees to waive all interest in all property subject to forfeiture under this agreement in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant further understands and agrees that forfeiture of the property is appropriate and in accordance with the applicable forfeiture statutes, which may include Title 8 U.S.C. § 1324(b), Title 18 U.S.C. §§ 924(d), 981, 982 and 2253, Title 21 U.S.C. §§ 853 and 881, and Title 28 U.S.C. § 2461(c).

  e. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

  f. Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose

upon the defendant in addition to forfeiture. This agreement does not preclude the United States from instituting any civil or administrative forfeiture proceedings as may be appropriate now or in the future.

    g.    The defendant agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, double jeopardy or any other means) to any forfeiture imposed as a result of this guilty plea or any pending or completed administrative or civil forfeiture actions, including that the forfeiture constitutes an excessive fine or punishment. The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding (including any proceeding to adjudicate the claim of any third party to the forfeited assets). The defendant acknowledges that all property covered by this agreement is subject to forfeiture and that no other person or entity has a legitimate claim to these items listed, other than any community property interest that his wife may have in the forfeited assets under state law.

    h.    The defendant agrees not to file a claim to any of the listed property subject to forfeiture under paragraph 8(a) of this agreement in any civil proceeding, administrative or judicial, which may be initiated. The defendant further agrees that he/she will not contest civil, administrative, or judicial forfeiture of that property. The defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees not to file a claim or assist others in filing a claim in that forfeiture proceeding.

    i.    The government reserves its right to proceed against any remaining assets not identified either in this agreement, other than the assets identified in paragraph 8(b) above, or in any civil actions which are being resolved along with this plea of guilty, including any property in which the defendant has any interest or control, if said assets, real or personal, tangible or intangible were involved in the offense(s).

    j.    The defendant hereby waives, and agrees to hold the government and its agents and employees harmless from any and all claims whatsoever in connection with

the seizure, forfeiture, and disposal of the property described above.  Without limitation,
the defendant understands and agrees that by virtue of this plea of guilty, the defendant
will waive any rights or cause of action that the defendant might otherwise have had to
claim that he/she is a "substantially prevailing party" for the purpose of recovery of
attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant
to 28 U.S.C. § 2465(b)(1).

**9.**     **ELEMENTS**

### Conspiracy

Beginning no later than 2004, and continuing through in or around March 2018, in the District of Arizona and elsewhere:

1.   There was an agreement between two or more persons to commit one or more of the crimes of Travel Act—Facilitate Prostitution (18 U.S.C. § 1952(a)(3)(A)), Concealment Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)), International Promotional Money Laundering (18 U.S.C. § 1956(a)(2)(A)),Transactional Money Laundering (18 U.S.C. § 1957(a)), and International Concealment Money Laundering (18 U.S.C. § 1956(a)(2)(B)(i)).

2.   The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3.   One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

**10.**    **FACTUAL BASIS**

a.   The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

In 2004, I co-founded the website www.Backpage.com ("Backpage"), along with M.L. and J.L.  Backpage eventually became the second-largest classified advertising website in the world and, during its 14 years of existence, has derived

the seizure, forfeiture, and disposal of the property described above. Without limitation, the defendant understands and agrees that by virtue of this plea of guilty, the defendant will waive any rights or cause of action that the defendant might otherwise have had to claim that he/she is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related civil forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

**9.      ELEMENTS**

### Conspiracy

Beginning no later than 2004, and continuing through in or around March 2018, in the District of Arizona and elsewhere:

1. There was an agreement between two or more persons to commit one or more of the crimes of Travel Act—Facilitate Prostitution (18 U.S.C. § 1952(a)(3)(A)), Concealment Money Laundering (18 U.S.C. § 1956(a)(1)(B)(i)), International Promotional Money Laundering (18 U.S.C. § 1956(a)(2)(A)),Transactional Money Laundering (18 U.S.C. § 1957(a)), and International Concealment Money Laundering (18 U.S.C. § 1956(a)(2)(B)(i)).

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

**10.     FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

In 2004, I co-founded the website www.Backpage.com ("Backpage"), along with M.L. and J.L. Backpage eventually became the second-largest classified advertising website in the world and, during its 14 years of existence, has derived

the great majority of its revenue from fees charged in return for publishing advertisements for "adult" and "escort" services.

I have long been aware that the great majority of these advertisements are, in fact, advertisements for prostitution services (which are not protected by the First Amendment and which are illegal in 49 states and in much of Nevada). Acting with this knowledge, I conspired with other Backpage principals (including but not limited to M.L, J.L, S.S., D.H., A.P, and J.V.) to find ways to knowingly facilitate the state-law prostitution crimes being committed by Backpage's customers. For example, I worked with my co-conspirators to create "moderation" processes through which Backpage would remove terms and pictures that were particularly indicative of prostitution and then publish a revised version of the ad. Such editing did not, of course, change the essential nature of the illegal service being offered in the ad—it was merely intended to create a veneer of deniability for Backpage. These editing practices were only one component of an overall, company-wide culture and policy of concealing and refusing to officially acknowledge the true nature of the services being offered in Backpage's "escort" and "adult" ads.

In addition to conspiring to knowingly facilitate the state-law prostitution offenses being committed by Backpage's customers, I also conspired with other Backpage principals (including but not limited to M.L, J.L, S.S., J.B., and D.H.) to engage in various money laundering offenses. Since 2004, Backpage has earned hundreds of millions of dollars in revenue from publishing "escort" and "adult" ads. Over time, many banks, credit card companies, and other financial institutions refused to do business with Backpage due to the illegal nature of its business. In response, I worked with my co-conspirators to find ways to fool credit card companies into believing that Backpage-associated charges were being incurred on different

websites, to route Backpage-related payments and proceeds through bank accounts held in the name of seemingly unconnected entities (including but not limited to Posting Solutions, Website Technologies, and Cereus Properties), and to use cryptocurrency-processing companies (including but not limited to CoinBase, GoCoin, Paxful, Kraken, and Crypto Capital) for similar purposes.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

_4-5-18_  
Date

_/s/ Carl Ferrer_  
CARL FERRER  
Defendant

**APPROVAL OF DEFENSE COUNSEL**

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

_4-5-18_
Date

NANCI CLARENCE
JONATHAN BAUM
Attorneys for Defendant

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

4-5-18
Date

KEVIN RAPP
DOMINIC LANZA
MARGARET PERLMETER
JOHN J. KUCERA
Assistant U.S. Attorneys

REGINALD JONES
Senior Trial Attorney

## ACCEPTANCE BY THE COURT

Sept 9, 2025
Date

United States District Judge